**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:21-cv-20543-MGC

ELIAS SANCHEZ SIFONTE and
VALERIE RODRIGUEZ ERAZO,

              Plaintiffs,

v.

JOSUE FONSECA, *et al.,*

              Defendants.

---

### TM TELEVISION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER AND INCORPORATED MEMORANDUM OF LAW, AND JOINDER IN DEFENDANTS JOSUE FONSECA AND JAGUAL MEDIA LLC'S MOTION TO DISMISS[1]

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant TM Television, Inc. ("TM Television,") moves to dismiss Plaintiffs' original Complaint [D.E. 1-2] against it for lack of personal jurisdiction.[2] TM Television also requests, and is joined by Defendants Josue Fonseca and Jagual Media LLC, that this Court transfer this action to the District Court for the District of Puerto Rico ("DPR") pursuant to 28 U.S.C. § 1404(a). In addition, TM Television joins and fully adopts Defendants Josue Fonseca and Jagual Media

---

[1] Defendants are aware of this Court's preference for consolidated briefing on matters applicable to multiple parties in the case. For this reason, the Defendants have adopted and joined the arguments of their co-defendants, where appropriate, to avoid duplicative briefing on the same issue across multiple dispositive motions.

[2] On February 26, 2021, Plaintiffs filed an amended complaint with their Motion for Remand. [D.E. 16, 17]. The amended complaint is not operative, however, because it seeks to interpose an amendment that would deprive this Court of jurisdiction over this case. *See Andreasen v. Progressive Express Ins. Co.*, 276 F. Supp. 3d 1317, 1321–22 (S.D. Fla. 2017). Until the Court determines whether proposed joinder of new, non-diverse defendants is permissible under 28 U.S.C. § 1447(e), the amended complaint is merely a proposed amendment. *Absorbezz LLC v. Hierseman*, 2019 WL 11506034, at *3 (S.D. Fla. Sept. 12, 2019) (Cooke, J.) (filing an amended complaint under Rule 15(a) "does not allow a plaintiff to avoid scrutiny under section 1447(e)").

LLC's Motion to Dismiss under Rule 12(b)(6) for all the reasons stated therein.[3] In support of this motion, TM Television states:

## INTRODUCTION

This Court does not have personal jurisdiction over TM Television, and the action belongs in Puerto Rico in any event. TM Television is a television production company created in and existing solely in Puerto Rico. It produces content in Puerto Rico that Telemundo and other entities broadcast, including the two TM-television produced shows at issue in this case. [D.E. 1-2 ¶ 39]. The broadcasts at issue concern a political scandal in Puerto Rico that had nothing to do with Florida.

Plaintiffs' efforts to assert that this Court has jurisdiction over TM Television focus on where the shows at issue were broadcast and distributed online, where the company's owner—Antonio Mojena—owns property in his individual capacity, and where an awards show—produced by a different entity—that has nothing to do with this case is produced. None of these facts are sufficient, whether individually or collectively, to establish either general or specific personal jurisdiction over TM Television. Accordingly, this Court should dismiss TM Television under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Although the Court may dismiss this case against TM Television, it requests that this Court transfer this case to the DPR for the convenience of the parties and witnesses, and to avoid unnecessary multiplication of Plaintiffs' claims.

## BACKGROUND

Plaintiffs allege that 25 separate publications reporting on a massive political scandal in Puerto Rico dubbed "TelegramGate" are defamatory. The 2019 scandal stemmed from a leak of hundreds of pages of private group chat messages between then Puerto Rico Governor Ricardo Rossello and several others, including Plaintiff Elias Sanchez Sifonte ("Sanchez"). Sanchez, a lobbyist, was Rossello's 2016 campaign manager, chair of his transition team and

---

[3] Plaintiffs likewise failed to provide sufficient pre-suit notice to TM Television § 770.01, Fla. Stat.; *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1474-75 (S.D. Fla. 1987) (prohibiting plaintiff from suing on statement not included in pre-suit notice); *Rendon v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1275 (S.D. Fla. 2019) (dismissing claims for statements for which no pre-suit notice was provided). Should the Court determine that it has personal jurisdiction over TM Television, TM Television requests the opportunity to brief the notice issue for the Court.

his liaison to Puerto Rico's Financial Oversight and Management Board. [D.E. 1-2 ¶ 25]. The leaked messages received widespread news coverage given their misogynistic, homophobic, and otherwise extremely offensive nature. [D.E. 1-2]; *see also* Opp. To Mot. To Remand [D.E. 24 at 3 and n.4]. More than 500,000 Puerto Ricans protested in the streets because of TelegramGate. *See* Ed Morales, *Why Half a Million Puerto Ricans Are Protesting in the Streets*, THE NATION, Jul. 19, 2019, https://www.thenation.com/article/archive/puerto-rico-protests-scandal-rossello/. Reporting was widespread, and Rossello ultimately resigned amid the scandal.

The more than 100 statements at issue in this action primarily discuss Sanchez's alleged exercise of improper influence over the Puerto Rico Department of Health and the Puerto Rico Department of Housing, among other Puerto Rico governmental concerns. [D.E. 1-2 ¶¶ 41-315]. Several statements also discuss Plaintiff Valerie Rodriguez Erazo's ("Rodriguez") alleged improper influence over Puerto Rico's Film Corporation and Puerto Rico's Planning Board. *Id.*

Although the Complaint lumps all Defendants together, providing only scant details on each Defendant's connection or role in the reporting, Plaintiffs allege that TM Television produces shows broadcast by other companies, but otherwise provide no context. [D.E. 1-2 ¶ 39]. TM Television submits with this motion the Declaration of Antonio Mojena ("Mojena Decl."), the sole owner of TM Television. As set forth in that declaration, TM Television is a Puerto Rico corporation with its sole office in Puerto Rico. Mojena Decl. ¶¶ 2-3. It does no business with Florida persons or entities. *Id.* ¶ 9. It has no property or bank accounts in Florida. *Id.* ¶ 10. And it receives no income from Florida sources. *Id.* ¶ 11. As for the publications challenged in the Complaint, TM Television only produces two of the shows at issue—*Día a Día* and *Jay y sus Rayos X*. *Id.* ¶ 4. TM Television produces these shows *only* in Puerto Rico. *Id.* ¶ 5. All the work is performed in Puerto Rico, where all of TM Television's staff is located. *Id.* ¶¶ 3-6. TM Television-produced shows at issue in this lawsuit do not mention and have no connection to Florida. *Id.* ¶¶ 7-8. The shows are produced for Telemundo of Puerto Rico LLC, and TM Television has no control or decision-making authority over how, when, or where the shows are broadcast. *Id.* ¶ 5. Put simply, TM Television has no contact with Florida.

**ARGUMENT**

TM Television is not subject to the exercise of personal jurisdiction in this Court because it is not at home in Florida and conducted no activities in Florida that form the basis for the underlying causes of action. In addition, the equities weigh heavily in favor of transfer of this action to the DPR under the framework set forth in *Frey v. Minter,* 829 F. App'x 432 (11th Cir. 2020).

**I.    TM TELEVISION IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE SOUTHERN DISTRICT OF FLORIDA**

To determine whether personal jurisdiction exists in diversity cases, courts must first look to whether personal jurisdiction exists under the forum's long-arm statute, and if so, "whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019).

There are two ways a defendant can be subject to Florida's long-arm statute: through general or specific personal jurisdiction. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015). General personal jurisdiction stems from "a defendant's substantial activity in Florida without regard to where the cause of action arose." *Louis Vuitton*, 736 F.3d at 1352. Specific personal jurisdiction, on the other hand, only authorizes jurisdiction "over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Id*. Two burdens are involved in long-arm analysis. First, "[a] plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id.* at 1350 (internal quotation marks omitted). Then, "[w]hen a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (internal quotation marks omitted). If Florida's long-arm statute is satisfied, the second portion of the analysis requires the Court to determine whether the exercise of jurisdiction is compatible with due process. *Id.*; *see also Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855-56 (11th Cir. 1990).

Importantly, each defendant's contacts with the forum must be scrutinized individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Celorio v. Google Inc.*, 872 F. Supp. 2d 1327, 1331 (N.D. Fla. 2012) ("Each defendant's contacts with the forum State must be assessed individually rather than simply viewing them collectively."). The Complaint, however, simply alleges that there is jurisdiction over "the Defendants" without distinction among them.[4] [D.E. 1-2 ¶¶ 13, 15]; *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1332 (M.D. Fla. 2011) (rejecting attempt to lump all defendants together to establish jurisdiction). Despite Plaintiffs' patently inappropriate attempt to conflate all the defendants, there is no personal jurisdiction over TM Television—a nonresident defendant— because Plaintiffs have not alleged sufficient facts making out a prima facie case of jurisdiction. But even if they had, the declaration submitted by TM Television's principal Antonio Mojena in support of this motion demonstrates lack of personal jurisdiction. And, as set forth below, exercising jurisdiction over TM Television would not comport with due process.

**A. TM Television is Not Subject to General Personal Jurisdiction in Florida.**

Because TM Television is a nonresident corporation, to establish that it is subject to general jurisdiction, Plaintiffs must show that it is "at home" in Florida—meaning that TM Television's contacts with the State of Florida are so substantial that it would be subject to jurisdiction here regardless of where the cause of action against it arose. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (a court may only assert general jurisdiction over a foreign corporation when its affiliations with the forum state are "so constant and pervasive as to render it essentially at home in the forum state"). Courts are skeptical of claims that foreign corporations are at home outside their principal place of business or state of incorporation. *See Waite*, 901 F.3d at 1317 (emphasizing that only in an "exceptional case" is a defendant's operations in another jurisdiction "so substantial and of such a nature as to render the

---

[4] Aside from failing to analyze each Defendant's individualized contacts with this forum, Plaintiffs riddle the entire Complaint with reference to "Defendants'" alleged acts. This "relatively rare sin" of bundling parties constitutes an impermissible shotgun pleading and serves as an independent basis for dismissal. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015) (identifying this as an impermissible shotgun pleading); *see also Mirabal v. Bank of Am. Corp.*, 2015 WL 12817702, at *2 (S.D. Fla. Oct. 1, 2015) (granting a motion to dismiss because plaintiff used the term "'Defendants' interchangeably without identifying which particular Defendant his allegations relate to").

corporation at home in that State") (citation omitted). In fact, the Supreme Court has only identified one "exceptional" case for the exercise of general jurisdiction over a nonresident corporation: a corporation that had temporarily relocated its office during wartime. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citations omitted); *see also Carmouche*, 789 F.3d at 1204–05 (same).

Here, Plaintiffs simply parrot the language of Florida's long-arm statute. [D.E. 1-2 ¶ 15 (generally alleging that "Defendants . . . engaged in substantial and not isolated activity within Florida")]. The only facts alleged concerning TM Television focus on its principal's activities and otherwise do not support a finding that TM Television is "at home" in Florida. *Compare* [D.E. 1-2 ¶ 39 (alleging that TM Television produced newscasts that were streamed by others into Florida, that Mojena served as executive producer of the Billboard Latin Music Awards produced in Florida, and that Mojena owns residential property in Miami)], *with Waite*, 901 F.3d at 1318 (finding no general jurisdiction over nonresident corporation in Florida even though defendant had a distributor in Florida, had Florida customers, planned a seminar in Florida, registered to do business in Florida, maintained a registered agent in Florida, and built a manufacturing plant in Florida). Indeed, TM Television has no connection to Florida. *See* Mojena Decl. ¶¶ 2-3, 9-11 (declaring that TM Television has no property, bank accounts, or registered agents in Florida and does no business and receives no income in Florida). Put simply, Plaintiffs have not and cannot provide a single fact that would allow this Court to find that TM Television is essentially "at home" here. Thus, there is no general personal jurisdiction over TM Television.

## B. TM Television is Not Subject to Specific Personal Jurisdiction.

Likewise, there is no basis for the exercise of specific personal jurisdiction over TM Television. Under the Florida long-arm statute, specific personal jurisdiction arises from a defendant's contacts with the forum state, "only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352 (citation omitted). Here, Plaintiffs bring various causes of action for defamation and generally allege that the challenged reporting is available online. [D.E. 1-2 ¶¶ 18, 61, 116, 164, 239, 250, 265, 283]. Therefore, this Court "must examine whether [Plaintiffs] pled sufficient facts to make out a prima facie case of a 'tortious act of Florida defamation' within Florida." *Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) (citations and parenthetical omitted). To do so, Plaintiffs

must establish that TM Television "made defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and were accessed in Florida." *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365 (S.D. Fla. 2019) (citation omitted).

Plaintiffs inappropriately regurgitate several sections of the long-arm statute that implicate specific jurisdiction. [D.E. 1-2 ¶¶ 13, 15]; *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("vague and conclusory allegations" cannot make a prima facie showing of jurisdiction). The only factual assertion related to the claims at issue in the 338-paragraph Complaint against *TM Television* is that it produced certain shows that are "broadcast and/or streamed *through* Telemundo and other outlets to U.S. Hispanic viewers.[5] . . ." [D.E. 1-2 ¶ 39 (emphasis supplied)]. Plaintiffs' scant allegation does not establish specific personal jurisdiction over TM Television with respect to the claims at issue. *See La Tele Prods. v. TV Azteca*, 2018 WL 4623532, at *4 (S.D. Fla. Sep. 25, 2018) ("Florida's long-arm statute surely does not contemplate [imputing] the alleged tortious acts of wholly unrelated entities . . . onto" the entity asserting lack of personal jurisdiction).

Plaintiffs likewise fail to allege that TM Television made the challenged reporting accessible in Florida, or that it was accessed in Florida. In fact, *TM Television* did not post any of the challenged reporting online. *See* Mojena Decl. ¶ 5 (noting that TM Television does not decide or control where or how any shows it produces with Telemundo are published, including their online dissemination). TM Television cannot be subjected to jurisdiction if *it* did not make the alleged defamatory content accessible in Florida. *See Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1215 (Fla. 2010) (noting that material has been "published" in Florida for defamation purposes in the internet context when the *poster* communicated material into Florida). Nor do Plaintiffs allege that the challenged reporting was accessed in Florida. [D.E. 1-2 ¶ 18 (alleging that *most* of the publications at issue "have been accessed by members of the Puerto Rican community (approximately 1.1 million in Florida) living within any of the fifty states")]. Plaintiffs' failure to specifically identify third parties who accessed the material is insufficient under the long-arm statute. *See Catalyst Pharm.*, 748 F. App'x. at

---

[5] Mojena's alleged personal connections are unrelated to the claims at issue and therefore cannot form the basis for specific jurisdiction. *Louis Vuitton*, 736 F.3d at 1352.

948 (purported defamatory statements must be "accessed by a third party in Florida"); *Mar. Exec., LLC v. Larson Elecs., LLC*, 2018 WL 2938376, at *4 (S.D. Fla. June 11, 2018) (plaintiff failed to satisfy the long-arm statute because it did not "identify a single third-party who it contends accessed the alleged defamatory material within Florida").

Because there is neither specific nor general personal jurisdiction over TM Television, this Court should dismiss TM Television from this case for lack of personal jurisdiction.

## C. The Exercise of Personal Jurisdiction Over TM Television Is Not Compatible with Due Process.

For general jurisdiction, the due process requirements coincide with the reach of Florida's long-arm statute. *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (the "reach of [the general jurisdiction] provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment"). Because there is no question that TM Television is not "at home" in Florida under the long-arm test set forth above, the exercise of general jurisdiction over it would also not comport with the due process requirements under the Constitution.

For specific jurisdiction, however, the Due Process Clause imposes additional hurdles: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Waite*, 901 F.3d at 1313 (citing omitted). Plaintiffs bear the burden of establishing the first two prongs in this analysis, and if they do, the burden shifts to the defendant to establish the third prong. *Louis Vuitton*, 736 F.3d at 1355.

### 1. Plaintiffs' claims do not "arise out of or relate to" Defendant's contacts with Florida.

"A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton*, 736 F.3d at 1355 (citing *Fraser*, 594 F.3d at 850). The Eleventh Circuit has instructed that this "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355-56. Thus, in this circuit, "a tort 'arise[s] out of or

relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite*, 901 F.3d at 1314. In other words, the Court must determine whether there would still be a claim absent a defendant's forum-related conduct.

As discussed above, Plaintiffs have not alleged and cannot establish that TM Television's activity *in Florida* is the but-for cause of the defamation. TM Television has *no* contacts with Florida that arise out of or relate to this claim. To the extent Plaintiffs' claim TM Television participated in the publications at issue, they were produced in Puerto Rico. Mojena Decl. ¶¶ 3-6. No employee or agent of TM Television traveled to Florida or communicated with anyone in Florida in connection with the publications. *Id.* ¶¶ 3-6, 8. None of the TM Television-produced publications referenced in the Complaint even mention Florida. *Id.* ¶ 8. And while the publications may be available online and accessible in Florida, accessibility in Florida is not the "but for" cause of the alleged tort, and in any event, no one from TM Television determined their publication or accessibility. *Id.* ¶ 5. Plaintiffs have not pointed to any *forum-related conduct* on behalf of TM Television that is the but-for cause of the defamation. Accordingly, Plaintiffs cannot meet their burden, and the Court need not consider the other prongs of the due process test.

**2. TM Television did not purposefully avail itself of the privilege of conducting activities in Florida.**

Even if the Court finds that Plaintiffs have satisfied the first prong of the due process analysis, Plaintiffs must still show that TM Television purposefully availed itself of the privilege of conducting activities in Florida. In intentional tort cases, courts assess the purposeful availment prong using the effects test established in *Calder v. Jones*, 465 U.S. 783 (1984). Under the effects test, Plaintiffs must show that TM Television's alleged tortious conduct was aimed at Florida and caused harm that TM Television should have anticipated would be suffered in Florida. *Miller*, 383 F. Supp. 3d at 1365 (citations omitted). This test ensures that a defendant's conduct and connection with a forum is significant enough that the defendant should "reasonably anticipate being haled into court" in the forum state. *See Sovereign Offshore Servs. v. Shames*, 2017 WL 7798664, *2-3 (S.D. Fla. Aug. 3, 2017) (applying *Calder* effects test).

*Calder,* itself a defamation case, is instructive. In *Calder*, California resident and actress Shirley Jones brought a defamation claim in California against the National Enquirer, a

Florida corporation, and two of its Florida journalists. *Calder*, 465 U.S. at 785-786. The plaintiff lived and worked in California, the article was drawn from California sources, the National Enquirer's largest circulation was in California, and "the brunt of the harm" was suffered in California. *Id.* at 788-90. The Supreme Court found jurisdiction existed in California under the "effects test" reasoning that: "California is the focal point both of the story *and* of the harm suffered." *Id.* at 789 (emphasis added). Here, Plaintiffs cannot satisfy the "effects test" because Florida is neither the focal point of the publications at issue nor the harm suffered.

First, the reporting at issue was not aimed at Florida. The reporting concerned a political scandal in Puerto Rico and involved politicians and lobbyists in Puerto Rico. Mojena Decl. ¶ 8. None of the TM Television-produced content at issue has any reference to Florida. *Id.* All of TM Television's production of the challenged reporting—the newsgathering, writing and editing—happened *only* in Puerto Rico. *Id.* ¶¶ 3-6. Although the challenged reporting may be available online and accessible in Florida, no one from TM Television had any say or control over that. *Id.* ¶ 5.[6] The unequivocal and sole focal point of the challenged reporting is Puerto Rico. *See Miller*, 383 F. Supp. 3d at 1375 (finding exercise of jurisdiction impossible where conduct giving rise to plaintiff's claim did not occur in Florida and publication, which was not specifically directed to Florida, lacked sufficient "Florida focus"); *Sovereign Offshore*, 2017 WL 7798664, at *3-4 (finding minimum contacts not met where "Plaintiffs have not established that Defendant directed the two blog posts at Florida consumers in order to exploit a Florida market" and "Florida is not the 'focal point' of the posts"); *Vision Media TV Group v. Forte*, 724 F. Supp. 1260, 1266 (S.D. Fla. 2010) (dismissing libel suit for lack of personal

---

[6] Even a "[d]efendant's awareness that [its publication] would be accessible in Florida, by virtue of the nature of the world-wide web, . . . [is] insufficient to establish that [d]efendant has minimum contacts with Florida." *Sovereign Offshore*, 2017 WL 7798664, at *4; *see also Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (explaining that "the mere fact that the allegedly libelous statements appeared in a publication sold to Florida residents is not sufficient to give a defendant fair warning that he may be haled into court [t]here").

jurisdiction where there was no evidence "showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience").

Second, Plaintiffs did not suffer the brunt of the alleged harm in Florida. *Calder*, 465 U.S. at 789 ("the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California" and the defendants "knew that the brunt of that injury would be felt by respondent" there). Although Plaintiffs now live in Florida, when the scandal reported on by Defendants ensued, Sanchez was an attorney, business consultant and lobbyist in Puerto Rico, where he had been residing since at least 2012. [D.E. 1-2 ¶ 25]. He had recently served as the campaign director for the Governor of Puerto Rico and was a liaison to Puerto Rico's Financial Oversight and Management Board. *Id.* Rodriguez is married to Sanchez and is a practicing attorney in Puerto Rico. *Id.* ¶ 26. The reporting concerned Plaintiffs' alleged corrupt acts in Puerto Rico with the government of Puerto Rico. Mojena Decl. ¶ 8; *see also* Declaration of Giselle M. Girones ("Girones Decl.") ¶¶ 3-21; Declaration of Josue Fonseca ("Fonseca Decl.") ¶ 4; Declaration of Sonia I. Melendez De Leon ("Melendez De Leon Decl.") ¶¶ 7-11.[7] Indeed, Plaintiffs concede in their Complaint that any reputational injury they suffered as a result of Defendants' publications was suffered *in Puerto Rico*: "*As a direct result of Defendants' ill will*, Sanchez lost his job and clients, endured death threats against himself, Rodriguez and their minor children, *and were forced to uproot from Puerto Rico permanently*." (emphasis added) [D.E. 1-2 ¶ 23]. Put simply, any harm Plaintiffs suffered occurred in Puerto Rico, and TM Television had no reason to believe the brunt of any injury would be felt in Florida. Accordingly, TM Television cannot be haled into court in Florida consistent with due process. *See Miller*, 383 F. Supp. 3d at 1373-74 (finding plaintiff did not satisfy "effects test" in a defamation action concerning a tweet about a Florida lawsuit because the harms alleged were not suffered in Florida and defendant had no reason to believe brunt of injury would be felt in Florida).

At bottom, the only connection between TM Television, Florida and this litigation is that Plaintiffs *now* reside here—having fled Puerto Rico to avoid the damages they claim the

---

[7] The broadcasts and articles at issue, along with certified transcriptions and translations of same, are attached to the Girones, Fonseca and Melendez De Leon declarations filed simultaneously herewith and in support of Defendants Josue Fonseca and Jagual Media LLC's Motion to Dismiss.

publications at issue caused them. As the Supreme Court made clear in *Walden v. Fiore*, 571 U.S. 277 (2014), this is not enough to establish jurisdiction over TM Television. In finding that a Georgia defendant lacked sufficient minimum contacts with Nevada to be subject to personal jurisdiction there, the Supreme Court held that "*the plaintiff cannot be the only link between the defendant and the forum*. Rather, it is the *defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285 (emphasis added). The Court distinguished the facts presented there from those in *Calder*, where jurisdiction was appropriate based on "the injury to the plaintiff's reputation in the estimation of the California public . . . *combined with the various facts that gave the article a California focus*[.]" *Id.* at 288 (emphasis added). Accordingly, Plaintiffs cannot carry their burden on the second prong of the due process test. *Sovereign Offshore*, 2017 WL 7798664, at *4 (plaintiffs' location in Florida insufficient to satisfy due process).

### 3. Asserting jurisdiction over TM Television would offend fair play and substantial justice.

The final due process consideration is whether exercise of personal jurisdiction over the defendant would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted). Because Plaintiffs cannot satisfy the first two prongs of the due process analysis, this Court need not consider this factor. *Miller*, 383 F. Supp. 3d at 1375.

TM Television produced television shows in Puerto Rico, about a Puerto Rico political scandal involving prominent citizens of Puerto Rico. Given "the utter poverty of contacts between [TM Television] and the State of Florida, and the concomitant threat that finding personal jurisdiction over [it] would represent to the interests of interstate federalism and state sovereignty" this is not "'one of those rare cases' in which notions of fair play and substantial justice may, in and of themselves, establish personal jurisdiction over a nonresident defendant." *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*, 896 F. Supp. 1190, 1196–97 (M.D. Fla. 1995); *see also Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1249 (M.D. Fla. 2019) ("because VLG lacks minimum contacts with Florida under *Calder's* 'effects test,' determining whether the burden on VLG outweighs the other considerations is unnecessary."). Simply stated, it would be unfair and unjust to exercise personal jurisdiction

over TM Television. As a result, the Court should find that it lacks jurisdiction over TM Television.

## II. TRANSFER TO THE DISTRICT OF PUERTO RICO IS WARRANTED

Whether or not this Court finds that it can properly exercise personal jurisdiction over TM Television, this action should be transferred to the DPR pursuant to 28 U.S.C. § 1404(a). Section 1404(a) permits transfer to a district court where the action might have been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). In determining the appropriateness of transfer under this section, courts employ a two-step process: First, the district court is tasked with determining "whether the action could have been pursued in the venue to which transfer is sought." *Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013). Second, the court assesses "whether convenience and the interests of justice require transfer to the requested forum." *Id. See also Game Controller Tech. LLC v. Sony Comput. Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1272 (S.D. Fla. 2014) ("Once a court finds an action could have been brought in the transferee forum, the court 'must weigh various factors . . . to determine if a transfer . . . is justified.'" (internal citations omitted). Both factors show that this case should be transferred to the DPR.

### A. This Lawsuit Could Have Been Brought in the DPR.

To transfer an action under section 1404(a), the Court must first determine that the alternative venue is one in which the action could have originally been brought. "[A]n action 'might have been brought' in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court." *Carucel Inv., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016). The DPR meets each of these requirements.

First, like this Court, the DPR has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse, and there is at least $75,000 in controversy. [D.E. 1; 1-3; 1-4; 1-2 ¶¶ 6–15 (no individual or corporate defendant is a citizen of Florida for purposes of diversity); *id.* ¶¶ 25-26 (Plaintiffs claim they are citizens of Florida); *id.* at p. 122, Wherefore Clause (claiming $35,000,000 in damages)]. Second, venue is proper in the DPR under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in that district. *See Frey*, 829 F. App'x at 436 (where the "events giving rise to [plaintiff's] claim occurred in the Middle District of Georgia, which was therefore a

permissible transferee venue"). With respect to TM Television, all the events that give rise to the alleged defamation occurred in the DPR. Mojena Decl. ¶ 8. The newsgathering, writing and editing occurred in Puerto Rico. *Id.* ¶¶ 3-6. The challenged reporting was produced entirely in Puerto Rico. *Id.* Similarly, with respect to the overall reporting of *all* the Defendants, the challenged news reports concern a political scandal in Puerto Rico and involve politicians and lobbyists in Puerto Rico. [D.E. 1-2 ¶¶ 41-315], including incorporated attachments (describing content of challenged publications); *see also* Girones Decl. ¶¶ 3-21; Fonseca Decl. ¶ 4; Melendez De Leon Decl. ¶¶ 7-11. Finally, although the challenged reporting is accessible online, the harm suffered occurred in Puerto Rico. [D.E. 1-2 ¶ 23 (alleging that challenged reporting caused Plaintiffs harm in Puerto Rico forcing them to move to Florida)]. Certainly, venue lies in the DPR. *See Montgomery v. Risen*, 2016 WL 4119865, at *1 (S.D. Fla. Jan. 26, 2016) (finding District of Columbia a proper venue where defendant conducted newsgathering in D.C. and government officials and sources who were named in publication were in D.C.). Third, in this case, all Defendants are amenable to process issuing out of the DPR because they are either located in Puerto Rico or consent to process there. [D.E. 1-2 ¶¶ 5–6, 9–10].[8] *See also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 11 (1st Cir. 1990) (explaining that specific jurisdiction under Puerto Rico's long-arm statute attaches to defendants who allegedly commit tortious acts within Puerto Rico). As such, Plaintiffs could have sued in Puerto Rico.

### B. The DPR is More Convenient for the Parties and Witnesses and Transfer Will Serve the Interests of Justice.

"Section 1404(a) is intended to place discretion in the district courts to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1281 (M.D. Fla. 2015) (internal quotations omitted). In conducting this analysis, courts in this circuit consider nine factors. Those factors are convenience of the witnesses, where the relevant documents and sources of proof are located, the convenience of the parties, the locus of operative facts, the availability of process to compel unwilling witnesses, the relative means of the parties, the

---

[8] Aside from TM Television, undersigned counsel represents all Defendants. Counsel represents that all Defendants have either joined in the motion to transfer via their responsive motions or consent to transfer.

forum's familiarity with the governing law, the weight accorded to plaintiff's choice of forum, and trial efficiency and the interests of justice. *Frey,* 829 F. App'x at 436. As shown below, the totality of these factors favors transfer.

### 1. The DPR is more convenient for witnesses.

"The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC*, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (citations omitted). In analyzing this factor, courts focus on witnesses that will be key to conducting the trial—especially witnesses that have information concerning the liability of the defendants. *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004). In defamation cases like this one, witnesses that determine liability are primarily those who can shed light on whether the challenged publications are false and whether the defendants acted with the requisite degree of fault. *Id.*

To the best of Defendants' knowledge, aside from Plaintiffs themselves, the witnesses likely to be called by all parties *all live in Puerto Rico*. Indeed, the challenged reporting concerns a massive political scandal involving the leak of Sanchez and others' messages with the Puerto Rico governor when Plaintiffs lived and worked in Puerto Rico. *See infra* pp. 3-4, 10-12. The reporting explained Plaintiffs' connections to scandals involving several members of the Puerto Rico government. [D.E. 1-2 ¶¶ 41-315 (including incorporated exhibits)], Mojena Decl. ¶ 8; Girones Decl. ¶¶ 3-21; Fonseca Decl. ¶ 4; Melendez De Leon Decl. ¶¶ 7-11. The people quoted in the publications and involved in the scandals are all in Puerto Rico. *Id.* In fact, Plaintiffs premise their claims on statements made by, or involving, *solely people in Puerto Rico*, including Puerto Rico congressmembers, current and former Puerto Rico public officials, Puerto Rico commissioners, and Puerto Rico journalists. *See* [D.E. 1-2 ¶¶ 41-315]; Mojena Decl. ¶ 8; Girones Decl. ¶¶ 3-21; Fonseca Decl. ¶ 4; Melendez De Leon Decl. ¶¶ 7-11. And, of course, the party witnesses primarily involved in the challenged reporting are *all* in Puerto Rico. [D.E. 1-2 ¶¶ 28-36, 38, 39].

"The convenience of the witnesses is best served when witnesses are allowed to testify in the forum where they reside." *Est. of Brooks v. United States*, 2020 WL 4923639, at *6 (S.D. Fla. Jan. 22, 2020) (citations omitted). If this case proceeds to trial, the overwhelming majority of party and non-party witnesses that will shed light on the Defendants' liability are

in Puerto Rico and will be greatly inconvenienced by a trial in this forum. *See Kesner v. Barron's, Inc.*, 2020 WL 4561596, at *3 (S.D. Fla. May 1, 2020) (transferring case to Southern District of New York based, in part, on the fact that majority of the parties, potential witnesses, and related persons reside in New York); *Risen*, 2016 WL 4119865, at *2 (stressing the fact that majority of the witnesses were in the District of Columbia supported transfer); *Carucel Inv.*, 157 F. Supp. 3d at 1228 (third party witnesses' proximity to transferee forum supports transfer); *Ramsey*, 323 F. Supp. 2d at 1357 (noting that few, if any, key witnesses had a connection with the forum state); *Game Controller Tech.*, 994 F. Supp. 2d at 1275 (stating that several potential witnesses would be aided by transfer). This is especially so where, as here, many of the witnesses hold positions within the Puerto Rico government. This factor weighs heavily toward transfer.

### 2. The relevant documents and sources of proof are in Puerto Rico.

As demonstrated in factor four below, the locus of operative facts is in Puerto Rico. Thus, the relevant documents and sources of proof are in Puerto Rico. *See Brooks*, 2020 WL 4923639, at *7 (tying location of documents to locus of operative facts and finding factor favored disclosure). All of the publications at issue were reported and produced in Puerto Rico, and all the documents related to those productions, including public records, court records and investigation records are located there. Mojena Decl. ¶¶ 3-6; Fonseca Decl. ¶¶ 3-4. As explained above, all the witnesses are located in Puerto Rico. Moreover, the Defendants who participated in the publications at issue, and *their* respective documents, are in Puerto Rico. [D.E. ¶¶ 28-36, 38, 39]; Mojena Decl. ¶¶ 3-6; Fonseca Decl. ¶¶ 3-4. This factor also strongly supports transfer to the DPR. *See Kesner*, 2020 WL 4561596, at *3 (finding in favor of transfer where the documents related to allegedly defamatory reporting were in the transferee jurisdiction); *Ramsey*, 323 F. Supp. 2d at 1357 (finding that significant documentary evidence, including records used in preparation of news report and records maintained by non-parties, was in transferee forum supported transfer).

### 3. Puerto Rico is more convenient for Defendants and is not burdensome for Plaintiffs.

As discussed above, TM Television is a Puerto Rico corporation with no relevant contacts with the State of Florida and not subject to personal jurisdiction. *See supra,* Section I. Accordingly, if this case is not transferred to Puerto Rico, where TM Television is subject to

jurisdiction, the result will be two separate actions over the same set of operative facts. This fact weighs heavily in favor of transfer. *See Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp. 2d 1049, 1068 (D. Kan. 2012) ("[T]he Court's interest in avoiding duplicative and piecemeal litigation strongly favors transfer of this matter to Delaware where all parties, including CCI may be sued."); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 58 (D.D.C. 2000) ("[T]he compelling public interest in avoiding duplicative proceedings (and potentially inconsistent judgments) warrants transfer of venue under these circumstances.").

With respect to Defendants Josue Fonseca, a resident of Puerto Rico, and Jagual Media, a Puerto Rico corporation, Puerto Rico is a more convenient forum. Fonseca is primarily responsible for the news reports at issue, and thus he will bear the brunt of defending the substance of the lawsuit. [D.E. ¶¶ 28-36, 38, 39]. Although these defendants do not contest this Court's exercise of personal jurisdiction over them, requiring them to defend this case in Florida will be burdensome, as they live, work, and operate in Puerto Rico. Fonseca Decl. ¶¶ 3-4.[9]

In contrast, Plaintiffs would not be significantly burdened by transferring this case to Puerto Rico. Plaintiffs have extensive ties to Puerto Rico and only recently moved to Florida. [D.E. 1-2 ¶ 23]. Indeed, Rodriguez appears to be currently working in Puerto Rico. She alleges she "is a practicing attorney" who is "a member in good standing of the state bar in Puerto Rico and is admitted to practice in the U.S. District Court for the District of Puerto Rico," the very forum to which Defendants request this case be transferred. *Id.* ¶ 26. Sanchez likewise has significant ties to Puerto Rico. He was the campaign manager of former Puerto Rico Governor Rosselló, a liaison to the Puerto Rico Financial Oversight and Management Board, and until recently worked as an attorney, lobbyist and business consultant in Puerto Rico. *Id.* ¶ 25. Plaintiffs clearly would have no hardship pursuing this case in Puerto Rico. *See Carucel*

---

[9] The remaining Defendants, NBCUniversal Media, LLC and Telemundo Network Group LLC, both Delaware corporations, have moved to dismiss the Complaint because they are not proper parties to the case and/or because they were not provided pre-suit notice as required by Florida Statute Section 770.01, *et seq.*

*Inv.*, 157 F. Supp. 3d at 1228 (plaintiff's ties to the transferee district weighed in favor of transfer).

### 4. The locus of operative facts is Puerto Rico, not Florida.

Plaintiffs cannot in good faith argue that the locus of operative facts for this action is Florida. The publications all relate to Puerto Rican affairs. They center on scandals concerning Plaintiffs and the Puerto Rico Department of Health, the Puerto Rico Film Corporation, and the Puerto Rico Department of Housing among other Puerto Rico governmental affairs. [D.E. 1-2 ¶¶ 44–45, 60, 62, 95, 142]. Only one of the more than 100 statements in the 25 publications at issue in this lawsuit even references Florida, and that statement nevertheless relates to TelegramGate and is overwhelmingly focused on Puerto Rico. [D.E. 1-2 ¶¶ 200, 204 (purportedly concerning allegations that Plaintiffs used illegal proceeds related to the Puerto Rico gubernatorial campaign to purchase a home in Miami)]. It cannot be disputed that the center of gravity of this case is Puerto Rico. *See Ramsey*, 323 F. Supp. 2d at 1358 ("the interests of justice weigh[ed] heavily in favor of transferring" to Colorado where the "defamation action arises out of a report researched, written, and produced in Colorado, about a crime that took place in Colorado, at the Plaintiffs' former residence in Colorado, and that was investigated by Colorado law enforcement, Colorado prosecutors and Colorado private investigators.").

Because the locus of operative facts is Puerto Rico and the brunt of any harm suffered by Plaintiffs befell them there, this factor "distinctly favors" transfer. *Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1282 (M.D. Fla. 2015); *Carucel Inv.*, 157 F. Supp. 3d at 1226 ("Although Plaintiff itself has ties to Florida, they are of a recent vintage. As a result, for most of the relevant time period, none of the alleged harm suffered occurred with the Southern District of Florida.").

### 5. Most witnesses are subject to compulsory process in Puerto Rico.

As established in factor one above, if this case proceeds to trial, the overwhelming majority of non-party witnesses that will shed light on the Defendants' liability are located in Puerto Rico. These witnesses are subject to compulsory process in the DPR, but they are beyond the subpoena power of this Court. *See Brooks*, 2020 WL 4923639, at *7 ("As to compulsory process, the Court cannot compel any unwilling witness residing outside of Florida to testify."); *Risen*, 2016 WL 4119865, at *2 ("availability of service of process to

compel the presence of unwilling witnesses" favored transfer); *Carucel Inv.*, 157 F. Supp. 3d at 1228 (noting, in transferring case, that forum state lacked power to issue subpoenas and enforce transferee forum witnesses' attendance at trial); *Game Controller*, 994 F. Supp. 2d at 1275 ("Courts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court." (internal quotation omitted)). "Given the fact that, when possible, live testimony is preferred over other means of presenting evidence," *Ramsey*, 323 F. Supp. 2d at 1356, this factor weighs heavily in favor of transfer.

### 6. The relative means of the parties is neutral.

Plaintiffs brought a sweeping 338-paragraph Complaint against several Defendants. Nothing in the record suggests that Plaintiffs lack the means to litigate this case in the DPR, where they have significant ties and where Rodriguez is licensed to practice law.

### 7. The transferee court's familiarity with governing law is "not given much importance."

While the transferee court's familiarity with the governing law is a factor under section 1404(a), "it is not given much importance." *Amar Shakti Enters., LLC v. Wyndham Worldwide, Inc.*, 2011 WL 13298587, at *4 (M.D. Fla. June 2, 2011) (citing *Grey v. Cont'l Mktg. Assocs., Inc.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970)). This factor is thus neutral.

### 8. Little weight should be given to Plaintiffs' choice of forum.

The deference generally paid to a plaintiff's choice of forum should be given little weight in this case. Where, as here, the operative facts underlying the cause of action did not occur within the forum chosen by Plaintiffs, "the choice of forum is entitled to less consideration." *Est. of Brooks*, 2020 WL 4923639, at *6 (citations omitted); *see also Osgood*, 981 F. Supp. 2d at 1267. As detailed above, the "locus of operative facts" in this action occurred in Puerto Rico, not Florida. This factor therefore does not weigh against transfer. *See Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) ("Because the claims raised in Motorola's complaint only appear to have a limited connection with this district, only minimal deference will be given to Plaintiff's choice of forum."); *Greiser v. Drinkard*, 2018 WL 7287083, at *5 (S.D. Fla. Nov. 16, 2018) ("Because the Court has already found that the 'locus of operative facts' is in Pennsylvania rather than in Florida, the weight

accorded Plaintiff's choice of forum is entitled to less deference and does not override the factors weighing in favor of transfer.").

### 9. Trial efficiency and the interests of justice favor transfer.

The other significant factors, including the convenience of parties and witnesses, favor transfer to the DPR. Trial would be more efficient in the DPR because that is where all the witnesses are located and subject to compulsory process. There is nothing in this record to show that trial would not be more efficient in the DPR and even "the mere possibility that trial will be held sooner in the original court does not justify denial of transfer when it is otherwise supported by the convenience of the parties and the witnesses." *Delorenzo*, 79 F. Supp. 3d at 1284 (quoting *Moore's Federal Practice*, Vol. 17 § 111.13[1][k] (3d ed. 2014)).

Moreover, the DPR has a significant interest in this case that warrants transfer, which is "the local interest in having localized controversies decided at home." *Brooks*, 2020 WL 4923639, at *8. As noted above, the challenged reporting is entirely localized to Puerto Rico. Certainly, there is a significant interest in deciding these issues at home.

The individualized balancing of factors overwhelming favors Puerto Rico.

## CONCLUSION

This case belongs in Puerto Rico. It is about Puerto Rico publications concerning political scandals in Puerto Rico. The Plaintiffs, who moved to Florida in the wake of these scandals and the reports implicating them therein, cannot sue the producer of the broadcasts in Florida consistent with due process. And they cannot prosecute this action against the remaining defendants in Florida without unfairly burdening them. For these reasons, TM Television requests that it be dismissed from this lawsuit for lack of personal jurisdiction. In addition, it moves to transfer the entirety of this action to the United States District Court for the District of Puerto Rico.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendant requests a single hearing addressing all Defendants' motions to dismiss and the motion to transfer this action to Puerto Rico. Given the number of parties to this dispute, the number of statements at issue, and the complexity of the issues raised by the motions, Defendant believes oral argument will assist the Court in adjudicating the motions. Defendant believes 1.5 hours would be a sufficient allotment of time for the combined hearing.

Dated: April 2, 2021.

Respectfully Submitted,

SHULLMAN FUGATE PLLC
**Deanna K. Shullman**
Deanna K. Shullman (Florida Bar No. 514462)
dshullman@shullmanfugate.com
Rachel E. Fugate (Florida Bar No. 144029)
rfugate@shullmanfugate.com
Giselle M. Girones (Florida Bar No. 124373)
ggirones@shullmanfugate.com
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Tel: (561) 429-3619

*Attorneys for Defendants*