**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ELIAS SÁNCHEZ-SIFONTE et al.,

**Plaintiffs,**

v.                                    **CIVIL NO. 22-1444 (RAM)**

JOSUE FONSECA, et al.

**Defendants.**

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Plaintiffs Elías Sánchez-Sifonte's ("Mr. Sánchez") and Valerie Rodríguez-Erazo's ("Mrs. Rodríguez") (collectively, "Plaintiffs") *Memorandum of Law in Compliance* ("*Memorandum in Compliance*" or "*Memorandum*") in response to the Court's show cause order at Docket No. 151. (Docket No. 154). The Court concludes that while Mr. Sánchez has not shown the actual malice necessary for six of his defamation and libel counts to avoid dismissal, Mrs. Rodríguez has shown the actual malice necessary for her defamation count to continue. For the reasons set forth below, the Court **DISMISSES WITH PREJUDICE** Counts Nine, Thirteen, Fourteen, Fifteen, Eighteen, and Twenty and **DENIES** Plaintiffs' request to amend the *SAC*.

## I.   FACTUAL BACKGROUND

Plaintiffs are former residents of Puerto Rico who were embroiled in Puerto Rico's summer 2019 "TelegramGate" scandal involving former Governor of Puerto Rico Ricardo Rosselló. As explained in the *Second Amended Complaint* ("*SAC*"), Mr. Sánchez was an attorney, consultant, and lobbyist in Puerto Rico who also served as campaign manager and transition team chairman for then-Governor Rosselló. (Docket No. 130 ¶ 8). Mrs. Rodríguez is Mr. Sánchez's wife and a practicing attorney. Id. ¶ 9.

During the summer of 2019, hundreds of pages of private group chat messages between the Governor and other individuals, including Mr. Sánchez, were leaked to the public. (Docket No. 73 at 2, 11). The messages caused major protests in Puerto Rico and culminated in the Governor's resignation. Id. at 2. Most of the stories at issue in this case were published during that summer.

Plaintiffs claim to have suffered economic, emotional, and reputational damages because various media organizations and reporters published defamatory statements about them. (Docket No. 130 ¶¶ 5-6). Accordingly, Plaintiffs filed the present lawsuit against Telemundo of Puerto Rico LLC ("Telemundo PR"), TM Television, Inc. ("TM Television"), Antonio Mojena ("Mr. Mojena"), Josue ("Jay") Fonseca ("Mr. Fonseca"), Jagual Media LLC ("Jagual"), NBCUniversal Media, LLC ("NBC"), and Telemundo Network Group LLC ("TNG") (collectively, "Defendants"). (Docket No. 130).

Plaintiffs initially asserted twenty counts of defamation, of which eighteen have survived in whole or in part.[1] (Docket No. 150 at 2, 37-39). Plaintiffs seek $5 million in compensatory damages for the alleged harm to their reputations, $30 million in consequential damages for the alleged harm to their business and property, and punitive damages. *See* id. at 2.

## II.  PROCEDURAL BACKGROUND

Plaintiffs originally filed this action in Florida state court before Defendants removed the action to the United States District Court for the Southern District of Florida based on diversity of citizenship. (Docket Nos. 1 and 1-2). The case was transferred to this District on September 13, 2021. (Docket Nos. 105; 108 and 110). Plaintiffs filed the *SAC* on November 9, 2022. (Docket No. 130). On November 22, 2022, Defendants filed a *Motion to Dismiss* against the *SAC* on various procedural and substantive grounds. (Docket No. 133).

On September 6, 2023, the Court granted in part and denied in part Defendants' *Motion to Dismiss*. (Docket No. 150). Counts Ten and Eleven were dismissed in their entirety while the remaining eighteen Counts continued. Id. at 37-39. That same day, the Court issued a show cause order to Plaintiffs as to why Counts Two, Nine, Thirteen, Fourteen, Fifteen, Eighteen, and Twenty should not be

---

[1] Each count corresponds to a single publication, except for Count One, which involves a July 16, 2019 broadcast that also replayed a segment from an April 16, 2019 broadcast. (Docket No. 150 at 2).

dismissed for failure to plead facts showing Defendants acted with actual malice. (Docket No. 151). This order forms the basis for the *Memorandum in Compliance*, which Plaintiffs filed on September 20, 2023. (Docket No. 154). Defendants filed a response on October 2, 2023. (Docket No. 155).

### III. LEGAL STANDARD

#### A. Applicable Law

Federal courts apply federal procedural law and state substantive law when subject-matter jurisdiction is based on diversity of citizenship. *See* Erie R. Co. v. Tompkins, 304 U.S. 64, 77-78 (1938). When defendants seek transfer of a case, "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." AER Advisors, Inc. v. Fidelity Brokerage Servs., LLC, 921 F.3d 282, 289 (1st Cir. 2019) (quoting Van Dusen v. Barrack, 376 U.S. 612, 639 (1964)). Here, the Court sits in diversity jurisdiction and applies Florida's substantive defamation law.[2] (Docket Nos. 105 at 35 and 130 ¶ 17).

#### B. Dismissal Under 12(b)(6)

Fed. R. Civ. P. 12(b)(6) allows a complaint to be dismissed for "failure to state a claim upon which relief can be granted." To determine if a complaint has stated a plausible, non-speculative

---

[2] As noted previously by the Court, neither party has raised a conflict of law issue. (Docket No. 150 at 9 n.6). Therefore, the Court continues to apply Florida substantive law.

claim for relief, a court must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011) (emphasis in original). This requires treating "any non-conclusory factual allegations in the complaint as true." Nieto-Vicenty v. Valledor, 984 F.Supp.2d 17, 20 (D.P.R. 2013); Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (courts should take "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor").

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. et al. v. Twombly et al., 550 U.S. 544, 555 (2007) (citation omitted). Further, a complaint will not stand if it offers only "naked assertion[s] devoid of further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Courts may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz, 669 F.3d

at 55–56 (quoting Arturet–Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

**C. Florida Defamation Law**

Defamation, including libel and slander, is defined as "a false and unprivileged publication of unfounded statements that injure a person." Harris v. Plapp, 386 So.3d 185, 189 (Fla. Dist. Ct. App. 2022) (quoting Delacruz v. Peninsula State Bank, 221 So.2d 772, 775 (Fla. Dist. Ct. App. 1969)). The Florida Supreme Court has held that a successful defamation claim requires: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." Jews for Jesus, Inc. v. Rapp, 997 So.2d 1098, 1106 (Fla. 2008) (citation omitted); see also Turner v. Wells, 879 F.3d 1254, 1261 (11th Cir. 2018).

*i.  Defamation by implication*

Florida has recognized defamation by implication, a subtype of defamation that allows defendants to be found liable for defamation despite using true facts. See Jews for Jesus, Inc., 997 So.2d at 1100, 1108 (noting defamation by implication does not extend to opinions); Readon v. WPLG, LLC, 317 So.3d 1229, 1237 (Fla. Dist. Ct. App. 2021) (citations omitted). Through defamation by implication, a plaintiff can succeed on a defamation claim when

a defendant makes "literally true statements...conveyed in such a way as to create a false impression" or "creates a defamatory implication by omitting facts." Jews for Jesus, Inc., 997 So.2d at 1106, 1108 (citation omitted). This false impression or inference, not the underlying facts, forms the basis for the defamation claim. Id. at 1108 n.13. Defamation by implication claims are treated the same as claims brought under general defamation law. Id. at 1008 (citation omitted).

*ii. Distinguishing public and private plaintiffs*

The determination of whether a plaintiff is a "public figure" rather than a "private figure" for First Amendment purposes is a question of law for the Court because it entails matters of a constitutional dimension. *See* Pendleton v. City of Haverhill, 156 F.3d 57, 67-68 (1st Cir. 1998). A plaintiff's defamation claim is evaluated differently if the plaintiff is a private figure rather than a public figure. *See* Mile Marker, Inc. v. Petersen Pub., LLC, 811 So.2d 841, 845 (Fla. Dist. Ct. App. 2002). The requirements for defamation of a private individual are relatively relaxed, as a successful claim need only show that the defendant acted "at least negligently." Jews for Jesus, Inc., 997 So.2d at 1106.

A public plaintiff is either a general public or limited public figure. A general public figure holds the "requisite fame or notoriety in a community" to "always" be considered a public figure. Mile Marker, Inc., 811 So.2d at 845 (citing Gertz v. Robert

Welch, Inc., 418 U.S. 323, 342 (1974)). A limited public figure is a person who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Gertz, 418 U.S. at 351.

To evaluate if a plaintiff is a limited public figure rather than a private plaintiff, a court must: (i) "determine whether there is a 'public controversy'" and (ii) "'determine whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy.'" Young v. Kopchak, 368 So.3d 1001, 1006 (Fla. Dist. Ct. App. 2023) (citation omitted); see Readon, 317 So.3d at 1234 n.1. A public controversy is "any topic upon which sizeable segments of society have different, strongly held views." Young, 368 So.3d at 1006 (citation omitted). To determine the existence of a public controversy, a court should ask "whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution. If the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants, it was a public controversy." Id. (quoting Della-Donna v. Gore Newspapers Co., 489 So.2d 72, 76 (Fla. Dist. Ct. App. 1986) (citation omitted). Courts should also consider the "level of media access enjoyed by a particular claimant...as part of the public figure calculus." Mile Marker, Inc., 811 So.2d at 846.

Public figure plaintiffs face a higher bar then private plaintiffs when bringing a defamation claim. "The First Amendment safeguards publishers from defamation suits brought by public figures unless the publisher acts with actual malice." Readon, 317 So.3d at 1235 (citation omitted). This heightened standard exists because, unlike private individuals, public plaintiffs have the opportunity "to contradict the lie or correct the error and thereby to minimize its adverse impact on [their] reputation." Gertz, 418 U.S. at 344.

    *iii. Actual malice*

For actual malice, "a public figure plaintiff must establish that the disseminator of the information either knew the alleged defamatory statements were false, or published them with reckless disregard despite awareness of their probable falsity." Mile Marker, Inc., 811 So.2d at 845; *see also* N.Y. Times v. Sullivan, 376 U.S. 254, 279-80 (1964); Readon, 317 So.3d at 1235 (quoting Don King Prods., Inc. v. Walt Disney Co., 40 So.3d 40, 43 (Fla. Dist. Ct. App. 2010) (actual malice requires "more than mere negligence" and is defined as "knowledge that the statement was false or reckless disregard of whether it was false or not") (citation omitted)); Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 665 (1989) ("a public figure plaintiff must prove more than an extreme departure from professional standards").

Under Florida law, actual malice poses an exacting standard for public figure plaintiffs. "The failure to investigate, without more, does not constitute actual malice." <u>Readon</u>, 317 So.3d at 1236 (citation omitted); *see also* <u>Lam v. Univision Commc'ns.</u>, 329 So.3d 190, 198 (Fla. Dist. Ct. App. 2021) ("actual malice requires more than a departure from reasonable journalistic standards") (citation omitted). A defendant does not need to mitigate "any negative statements" made against a plaintiff or search for someone to defend the plaintiff. <u>Don King Prods.</u>, 40 So.3d at 45 (citation omitted). Additionally, the existence of ill will or motive cannot be the only proof of actual malice. *See* <u>id.</u> at 44 (noting, however, ill will or motive can be combined with other evidence to prove actual malice). "An intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood." <u>Id.</u> at 45 (citation omitted).

Failing "to retract or correct a falsehood does not prove actual malice." <u>Hunt v. Liberty Lobby</u>, 720 F.2d 631, 643 n.19 (11th Cir. 1983) (citation omitted); *see also* <u>Dockery v. Fla. Democratic Party</u>, 799 So.2d 291, 296 (Fla. Dist. Ct. App. 2001) (defendant's failure to print plaintiff's denials did not constitute actual malice) (citations omitted). A defendant's failure to contact the subject of an article before publication does not constitute actual

malice, even if this "breaches relevant journalistic standards or practices." <u>Klayman v. City Pages</u>, 2015 WL 1546173, at *16 (M.D. Fla. 2015) (citation omitted).

## IV.  DISCUSSION

The Court turns to evaluate Plaintiffs' status as public or private figures before determining whether Plaintiffs have pleaded adequate cause for their defamation claims under Florida law. The Court does not consider aspects of Plaintiffs' claims unrelated to its show cause order. (Docket No. 151).

### A. Categorizing Plaintiffs as Private or Public Figures

#### i. Elías Sánchez-Sifonte

The Court finds that Mr. Sánchez is a public figure because of his professional and political activities, particularly as no party contests that he qualifies as a public figure. (Docket Nos. 130 ¶ 8; 154 at 4 and 155 at 4). Consequently, he must plead facts alleging the existence of actual malice by the Defendants to prevail on his defamation claims. *See* <u>Readon</u>, 317 So.3d at 1234. As Counts Nine, Thirteen, Fourteen, Fifteen, Eighteen and Twenty all involve defamation claims pertaining to Mr. Sánchez, the Court will evaluate these Counts under an actual malice standard. (Docket No. 155 at 4).

#### ii. Valerie Rodríguez-Erazo

The Court turns to Mrs. Rodríguez. Unlike her husband, she is not a general public figure. Mrs. Rodríguez served as "a special

aide to the Executive Director of a public corporation" from 2009-2010, but Plaintiffs assert this role did not involve media exposure or grant Mrs. Rodríguez any political power or influence that would justify labeling her a general public figure. (Docket No. 130 ¶ 9). She has not held the sort of employment that would grant her "fame or notoriety" in the community. Gertz, 418 U.S. at 342. *Cf* Demby v. English, 667 So.2d 350, 354 (Fla. Dist. Ct. App. 1995) (public officials include those "occupying upper level political or administrative positions" and exercising independent and supervisory authority); Finkel v. Sun Tattler Co., Inc., 348 So.2d 51, 52 (Fla. Dist. Ct. App. 1977) ("appellant is a public official or public figure by virtue of his former status as city attorney and his current activities relating thereto").

The Court next considers whether Mrs. Rodríguez is a limited public figure by determining if there is a "public controversy" and, if so, whether Mrs. Rodríguez "played a sufficiently central role" to become a limited public figure. Young, 368 So.3d at 1006. The Court concludes a public controversy exists. Since 2011, Mrs. Rodríguez "has provided legal services to the Planning Board of Puerto Rico" on code enforcement matters. (Docket No. 130 ¶ 133(a)). While her work is not typically the kind that would "be a topic on the daily evening news," a segment of the population, namely those working in real estate or construction, would be impacted by the Planning Board's activities. Mile Marker, Inc.,

811 So.2d at 845. It is possible that different segments of society could be impacted by and have contrasting views on Planning Board activities. *See* <u>Young</u>, 368 So.3d at 1006 (citations omitted). Furthermore, Defendants note that the Planning Board's activities involve the allocation and use of government funds, which is an ongoing matter of public interest. (Docket No. 155 at 6).

Mrs. Rodríguez has arguably played a "sufficiently central role in the instant controversy" to become a limited public figure on matters relating to her work in code enforcement with the Planning Board. <u>Young</u>, 368 So.3d at 1006 (citation omitted); *see* <u>Mile Marker, Inc.</u>, 811 So.2d at 846. She has provided legal services to the Planning Board since 2011. (Docket No. 130 ¶ 133(a)). Although she does not appear to have deliberately sought out media attention for her work, her professional service proposal was aired on a broadcast by Defendants, albeit blurred and purportedly misquoted. *See* <u>Mile Marker, Inc.</u>, 811 So.2d at 846; (Docket No. 130 ¶ 42). Even if done unintentionally, Mrs. Rodríguez was 'drawn in' as a limited public figure for matters arising out of her job with the Planning Board. <u>Gertz</u>, 418 U.S. at 351. Therefore, Mrs. Rodríguez can be considered a limited public figure for controversies related to her work at the Planning Board.

**B. Presence of Negligence and Actual Malice**

*i.  Plaintiffs' Contextual Argument*

For Counts Nine, Thirteen, Fourteen, Fifteen, and Eighteen, Plaintiffs argue that context is key in determining whether the actual malice standard is met. (Docket No. 154 at 5). However, Plaintiffs do not cite, and the Court does not find, any binding legal authority in support of this argument. Although a defamatory statement can be considered in the larger context of the publication it appears in, Plaintiffs have not presented any sources showing that multiple separate counts of defamation must be considered together for purposes of Florida defamation law. *See* Byrd v. Hustler Mag., Inc., 433 So.2d 593, 595 (Fla. Dist. Ct. App. 1983) ("a publication must be considered in its totality"). Furthermore, as argued by Defendants, following Plaintiffs' directions would result in the survival of one defamation count precluding dismissal of all other defamation counts for a lack of actual malice. (Docket No. 155 at 15).

Plaintiffs also argue that actual malice can be proven through circumstantial evidence such as a defendant's failure to investigate or a defendant's anger and hostility towards a plaintiff. (Docket No. 154 at 10-11). These assertions are largely supported by citations to court decisions from other states that are not supported by (and indeed, often run contradictory to) applicable Florida case law. Id. As discussed below, except for

Count Two, the Court finds Plaintiffs have failed to show the actual malice necessary for these counts to survive dismissal.

  *ii.  Count Two*

     Count Two is for defamation and was brought by Mrs. Rodríguez over statements made in an October 8, 2019 broadcast that purportedly implies Mrs. Rodríguez engaged in corrupt and unethical behavior while working with the Puerto Rico Planning Board. (Docket No. 130 ¶¶ 46, 131, 133). As described in the *SAC*, during the broadcast a journalist identified Mrs. Rodríguez as Mr. Sánchez's wife and "one of the architects of the modification of zoning regulation maps in Puerto Rico." Id. ¶ 41. The journalist and a show guest then discussed the supposed modification of zoning maps to benefit "certain developers and some individuals with high political influence" and questioned whether part of the Puerto Rico Planning Board's regulations was privatized and modified by an "external consultant." Id. ¶ 44. The broadcast also displayed a "blurry version of [Mrs. Rodríguez's] professional service proposal to the Planning Board" and the words "A tailored made map for certain people?" Id. ¶ 42.

     Plaintiffs claim that Defendants[3]: (i) did not provide sources showing Mrs. Rodríguez was involved in zoning map changes; (ii) did not give Mrs. Rodríguez the opportunity to refute statements

---

[3] Unless otherwise stated, all Defendants are parties to a count.

made in the relevant broadcast; and (iii) continued to imply Mrs. Rodríguez acted inappropriately after the president of the Puerto Rico Planning Board denied that Mrs. Rodríguez had participated in any zoning map changes. (Docket No. 154 at 3).

Assuming that Mrs. Rodríguez should be categorized as a limited public figure under Count Two, Plaintiffs have plausibly alleged actual malice. Taking all "non-conclusory factual allegations in the complaint as true" and drawing all reasonable inferences in Plaintiffs' favor, the Court finds it plausible that Defendants acted with actual malice in implying Mrs. Rodríguez tailored zoning maps to benefit her clients. Nieto-Vicenty, 984 F.Supp.2d at 20; *see* Schatz, 669 F.3d 40; Jews for Jesus, Inc., 997 So.2d at 1106; (Docket Nos. 130 ¶ 41 and 154 at 13-14).

Notably, Plaintiffs assert in the *SAC* that the president of the Puerto Rico Planning Board was interviewed by the same journalist who hosted the October 8, 2019 broadcast and had "repeatedly" told that journalist that Mrs. Rodríguez was not involved in editing the zoning maps. (Docket Nos. 130 ¶ 41 and 154 at 13). Mrs. Rodríguez's actual job is in code enforcement, not zoning, supporting the Planning Board president's claims that Mrs. Rodríguez never edited any Puerto Rican zoning maps. (Docket No. 130 ¶ 133(b)). In light of the Planning Board president's statements to the journalist, it is plausible that Defendants knew their statements about Mrs. Rodríguez's work with the Planning

Board were false or acted with reckless disregard as to their falsity. *See* <u>Mile Marker, Inc.</u>, 811 So.2d at 845. Count Two thus survives dismissal under Fed. R. Civ. P. 12(b)(6).

> *ii.  Count Nine*

Count Nine is for defamation and was brought by Mr. Sánchez against Mr. Fonseca, Telemundo PR, NBC, Jagual, and TNG over statements made in a July 12, 2019 broadcast. (Docket No. 130 at 92). The broadcast suggested Mr. Sánchez was improperly appointed to then-Governor Rosselló's government transition committee so he could use information gained in his professional capacity to benefit his clients. <u>Id.</u> ¶ 172.

During the broadcast, Mr. Fonseca directed a series of questions about Mr. Sánchez towards then-Governor Rosselló. <u>Id.</u> ¶ 70. Questions included: "Why do you protect so much Elías Sánchez?"; "When agency heads called you...to warn you that Elías was continually calling them pushing contracts, did you arrest Elías Sánchez?"; "Mr. Governor, when employees and bosses and members of your cabinet repeatedly warned you of questionable acts by Elías Sánchez, did you stop him?" <u>Id.</u> ¶ 70(a)-(b). In a longer segment of the broadcast, Mr. Fonseca stated:

> Mr. Governor, it was you...who appointed Elías Sánchez as your delegate to the board and president of the government transition committee, that is, **you gave him the mechanisms to to [sic] find out about all the contracts, all the purchases, all the computers, all the software that was going to**

> **be bought, all from Elías Sánchez...And after**
> **that knowing that at six months he would**
> **become a lobbyist and call the heads of the**
> **agency to push contracts in his interests.**

Id. ¶ 70(c) (emphasis in original). While speaking, Mr. Fonseca

twice stated his "usual" catchphrases "the facts are the facts"

and "this is not my opinion." Id. ¶ 70.

Plaintiffs assert that Mr. Fonseca erred by referring to Mr.

Sánchez as president of the government transition committee

because while Mr. Sánchez was chairman of the committee, another

individual held the primary leadership role of executive director.

Id. ¶ 172(a). Plaintiffs also claim Mr. Fonseca omitted information

that would have cast Mr. Sánchez in a more favorable light and

clarified the actual nature of his work with the government. Id.

¶ 172(b).

Plaintiffs fail to provide facts that plausibly satisfy the

actual malice threshold under Florida law. Id. ¶¶ 70-71; 170-74.

Mr. Fonseca may have made unflattering and inappropriate comments

directed at Mr. Sánchez, but Plaintiffs do not allege additional

facts that allege Defendants either: (i) knew the allegedly

defamatory statements were false; or (ii) published the statements

"with reckless disregard despite awareness of their probable

falsity." Mile Marker, Inc., 811 So.2d at 845.

Even if Defendants failed to present sufficient sources or

give Mr. Sánchez the opportunity to refute the contents of the

broadcast, actual malice requires more. *See* <u>Readon</u>, 3137 So.3d at 1236 (failure to investigate does not single-handedly prove actual malice); <u>Don King Prods.</u>, 40 So.3d at 45 (defendant does not need to mitigate statements made against plaintiff); <u>Klayman</u>, 2015 WL 1546173 at *16; <u>Hunt</u>, 720 F.2d at 643 n.19. Viewing the *SAC*'s allegations in the light most favorable to Plaintiffs and assuming that Defendants failed to adequately investigate the underlying facts of the July 12, 2019 broadcast, the *SAC* still does not plausibly plead that Defendants acted with actual malice. *See* <u>Mile Marker, Inc.</u>, 811 So.2d at 845; <u>Ocasio-Hernandez</u>, 640 F.3d at 14; (Docket No. 130 ¶¶ 70-71, 170-74); Fed. R. Civ. P. 12(b)(6).

In essence, Count Nine lists various "labels and conclusions" claiming that Defendants committed defamation but lacks the non-conclusory factual allegations necessary to survive dismissal for failure to state a claim upon which relief can be granted. <u>Twombly</u>, 550 U.S. at 555; *see* <u>Nieto-Vicenty</u>, 984 F.Supp.2d at 20. Given the failure to plead an adequate factual backing, the Court finds that Plaintiffs have not stated a plausible claim for relief to survive dismissal under Fed. R. Civ. P. 12(b)(6).

*iii. Count Thirteen*

Count Thirteen is for defamation and was brought by Mr. Sánchez over a July 18, 2019 broadcast that stated Mr. Sánchez untimely filed certain financial disclosures and engaged in a pay-for-play scheme by employing Governor Rosselló during his campaign

for governor in return for future benefits under Governor
Rosselló's administration. (Docket No. 130 ¶¶ 83, 87). Among other
comments, the broadcast stated: "Elías Sánchez paid the governor
his salary [while Governor Rosselló was campaigning]...and then
Elías came and orchestrated a whole system to enrich himself" and
"for the record, this is not an opinion, this is facts...Can it be
disputed that Elías Sánchez was the employer of Ricardo Rossello
and that Ricardo Rossello later allowed Elías Sánchez to enrich
himself without restraint?" Id. ¶ 83(a)-(b).

Plaintiffs assert that Mr. Sánchez had filed his financial
disclosures with the Financial Oversight and Management Board
(FOMB) "in a timely manner" and that his publicly available
disclosure documents contain "absolutely no information" regarding
an employment agreement of the type alleged in the July 19, 2019
broadcast. Id. ¶ 216(a). Mr. Sánchez's FOMB disclosures did not
require or include information about payments to employees in the
six years prior to 2019. Id. However, Plaintiffs acknowledge
Governor Rosselló was employed by Mr. Sánchez's company for less
than six months in 2012 and received a salary of $5,000 per month.
Id. ¶ 216(c).

Plaintiffs fail to provide facts that could plausibly satisfy
the actual malice threshold under Florida law. Id. ¶¶ 83, 87, 216.
Although a better investigation by Defendants could have revealed
factual problems with the July 18, 2019 broadcast, "the failure to

investigate, without more, does not constitute actual malice." Readon, 317 So.3d at 1236. Plaintiffs complain that Defendants failed to provide sources for their claims or give Mr. Sánchez the opportunity to refute them. (Docket No. 154 at 16). However, a defendant's failure to contact a plaintiff before publication does not singlehandedly prove actual malice. *See* Klayman, 2015 WL 1546173 at *16. Plaintiffs have not plausibly alleged facts that Defendants either: (i) knew the allegedly defamatory statements were false; or (ii) published the statements "with reckless disregard despite awareness of their probable falsity." Mile Marker, Inc., 811 So.2d at 845.

The Court finds that Count Thirteen lacks plausible grounds for relief after treating all "non-conclusory factual allegations in the complaint as true" and drawing all reasonable inferences in Plaintiffs' favor. Nieto-Vicenty, 984 F.Supp.2d at 20; *see* Schatz, 669 F.3d 40. Simply put, Plaintiffs have not alleged sufficient facts indicating Defendants acted with actual malice. While Defendants' actions may not reflect a high degree of journalistic integrity or good will towards Mr. Sánchez, Plaintiffs have not alleged facts to plausibly show Defendants acted with actual malice on Count Thirteen. Fed. R. Civ. P. 12(b)(6). *See* Don King Prods., 40 So.3d at 45; Dockery, 799 So.2d at 296; Readon, 317 So.3d at 1236.

### iv.  Count Fourteen

Count Fourteen is for libel and was brought by Mr. Sánchez against Mr. Fonseca and Jagual over a July 18, 2019 Facebook post that summarizes and restates the broadcast in Count Thirteen. (Docket Nos. 130 ¶¶ 83-84 and 154 at 17). The post stated Mr. Sánchez "INVESTED HEAVILY IN [Governor Rosselló] BEFORE HE WAS GOVERNOR - And now [Plaintiffs and Mr. Sánchez's in-laws] filled their hands and became a millionaire thanks to [Governor Rosselló]. These are the facts." (Docket No. 130 ¶ 84). The post also claimed Mr. Sánchez was Governor Rosselló's employer and had disclosed this in his financial disclosure reports. Id.

Plaintiffs argue the Facebook post falsely implies Mr. Sánchez enriched himself "as payback for having supported [Governor] Rosselló financially" during his campaign for governor, and that this is shown in Mr. Sánchez's financial disclosures. Id. ¶ 87(a)-(b). Their arguments mirror those provided in Count Thirteen, namely that Mr. Sánchez timely filed his financial disclosures and that none of his disclosures listed an employment agreement of the type alleged in the July 18, 2019 Facebook post. Id. ¶¶ 216, 221.

Unfortunately for Plaintiffs, Count Fourteen also mirrors Count Thirteen by failing to allege actual malice. Id. ¶¶ 84, 87, 216. Plaintiffs argue that Defendants did not provide corroborating sources or give Mr. Sánchez the opportunity to refute

the claims made in the Facebook post. (Docket No. 154 at 16).
However, Plaintiffs are essentially alleging Defendants engaged in
sloppy investigative practices, and "the failure to investigate,
without more, does not constitute actual malice." Readon, 317 So.3d
at 1236; *see also* Klayman, 2015 WL 1546173 at *16. Furthermore,
while Plaintiffs may be justified in arguing "there was clearly an
ill will on Defendants['] part" against Mr. Sánchez, they cannot
equate the presence of ill will with the existence of actual
malice. Don King Prods., 40 So.3d at 45 (ill will alone cannot
prove actual malice); (Docket No. 154 at 18).

Although Plaintiffs claim that Defendants "failed to
investigate the claims against [Mr.] Sánchez because of that ill
will," they have not alleged facts to plausibly indicate Defendants
either: (i) knew the allegedly defamatory statements were false;
or (ii) published the statements "with reckless disregard despite
awareness of their probable falsity." Mile Marker, Inc., 811 So.2d
at 845; (Docket No. 154 at 18). After treating all "non-conclusory
factual allegations in the complaint as true" and drawing all
reasonable inferences in Plaintiffs' favor, the Court finds that
Plaintiffs have not plausibly stated a claim for relief that
survives dismissal under Fed. R. Civ. P. 12(b)(6). Nieto-Vicenty,
984 F.Supp.2d at 20.

*v.  Count Fifteen*

Count Fifteen is for defamation and was brought by Mr. Sánchez against Mr. Fonseca, Telemundo PR, NBC, Jagual, and TNG over a June 11, 2019 broadcast where Mr. Fonseca stated Mr. Sánchez obtained "secrets of the state" through his position in the transition committee and benefitted personally and professionally from his government access. (Docket No. 130 ¶¶ 90, 92, 224). The broadcast described Mr. Sánchez as "knowing all the secrets" of the Puerto Rican government through his work on then-Governor Rosselló's campaign and transition committee, and stated Mr. Sánchez was "going to have all the confidential secrets" between the FOMB and Puerto Rican government. Id. ¶ 90(a)-(b). The broadcast proceeded to claim that Mr. Sánchez subsequently resigned from the government and asked Puerto Rican agency heads to give contracts to his private clients, with officials who refused Mr. Sánchez being dismissed from their positions. *See* id. ¶ 90(c).

Plaintiffs argue the broadcast wrongly portrayed Mr. Sánchez as having access to "state secrets" when he only had access to public information during his tenure on the FOMB and the transition committee. *See* id. ¶ 226. Additionally, Plaintiffs assert that no public official has claimed Mr. Sánchez pressured them or caused their termination. *See* id. ¶ 226(c).

As with previous Counts, Plaintiffs' primary support for the plausible existence of actual malice is that Defendants did not provide corroborating sources for the broadcast and that Mr. Sánchez was not given an opportunity to refute Defendants' statements. (Docket No. 154 at 18). And as with previous counts, Plaintiffs fail to allege actual malice under Florida law. *See* Mile Marker, Inc., 811 So.2d at 845. While Defendants' investigation may not meet proper journalistic practices, the Court cannot infer actual malice solely through a defendant's departure from professional standards. *See* Harte-Hanks Commc'ns., Inc., 491 U.S. at 665 ("a public figure plaintiff must prove more than an extreme departure from professional standards").

Defendants' failure to fully investigate their claims and refusal to allow Mr. Sánchez to refute them does not plausibly indicate that they "intended to inflict harm through knowing or reckless falsehood." Don King Prods., 40 So.3d at 45; *see* Readon, 317 So.3d at 1236; Klayman, 2015 WL 1546173 at *16 (defendant is not required to contact plaintiff before publishing content about plaintiff). Plaintiffs have failed to provide well-pled facts that plausibly allege actual malice. *See* Schatz, 669 F.3d at 50. Making all reasonable inferences in Plaintiffs' favor, the Court finds Count Fifteen lacks sufficient factual backing to survive Fed. R. Civ. P. 12(b)(6). *See* Ocasio-Hernandez, 640 F.3d at 14.

*vi.  Count Eighteen*

Count Eighteen is for defamation and was brought by Mr. Sánchez over a July 30, 2019 broadcast where Mr. Fonseca accused Mr. Sánchez "of seeking to bypass competitive procedures to benefit his clients and coerce government officials to grant government contract[s] to his clients." (Docket No. 154 at 19). During the broadcast, Mr. Fonseca stated Mr. Sánchez "asked for contracts" outside of normal governmental processes, with the implication that Mr. Sánchez acted to benefit his clients. (Docket No. 130 ¶¶ 111(a), 112).

Plaintiffs argue that the broadcast did not provide corroborating sources or provide Mr. Sánchez with the opportunity to refute the claims. (Docket No. 154 at 19). They assert that Mr. Sánchez has not been accused of wrongdoing before, and there is "at least a probability" that Defendants acted with actual malice given other counts of defamation in the instant case survive. Id.

Again, the Court finds Plaintiffs have not alleged facts that could plausibly allege actual malice. Plaintiffs' claim that there is "at least a probability" of actual malice does not satisfy Fed. R. Civ. P. 12(b)(6)'s plausibility requirement. *See*, *e.g.*, Ocasio-Hernandez, 640 F.3d at 14; (Docket No. 154 at 19). After taking "any non-conclusory factual allegations" in the *SAC* as true, Plaintiffs only allege that Defendants failed to properly investigate the underlying facts of the July 30, 2019 broadcast

because of their ill will towards Mr. Sánchez. <u>Nieto-Vicenty</u>, 984 F.Supp.2d at 20; (Docket No. 154 at 19-20). While Plaintiffs claim Defendants did not give Mr. Sánchez the opportunity to refute the contents of the July 30, 2019 broadcast, this is akin to other purported departures from professional journalistic standards that, without more, cannot prove actual malice. *See* <u>Klayman</u>, 2015 WL 1546173 at *16; <u>Readon</u>, 317 So.3d at 1236.

As stated previously, Plaintiffs do not allege facts to plausibly allege that Defendants either: (i) knew the allegedly defamatory statements were false; or (ii) published the statements "with reckless disregard despite awareness of their probable falsity." <u>Mile Marker, Inc.</u>, 811 So.2d at 845. Without alleging facts to plausibly show actual malice, the Court finds that Count Eighteen cannot survive Fed. R. Civ. P. 12(b)(6).

*vii. Count Twenty*

Count Twenty is for libel and was brought by Mr. Sánchez against Mr. Fonseca and Jagual over a November 25, 2020 statement posted to Mr. Fonseca's account on X (formerly known as Twitter).[4] (Docket Nos. 130 ¶¶ 120-23 and 154 at 20). The post stated "[a]n ex-powerful [person] has already sent about 25 letters threatening to sue...he keeps sending letters on key dates...the threats of a

---

[4] Plaintiff variously refers to the content in County Twenty as an X post or a Facebook post; the Court continues to refer to the social media post as an X post. (Docket Nos. 130 ¶¶ 120, 267 and 154 at 20).

corrupt person like you entertain me." (Docket No. 130 ¶ 120). Mr. Fonseca deleted the post "within minutes." Id. ¶¶ 121, 267(b).

While not identifying Mr. Sánchez by name, Plaintiffs assert that readers of the post immediately knew it was referring to Mr. Sánchez. Id. ¶ 121. Plaintiffs claim the post was made the day after the Board of the Independent Prosecutor issued a report finding there was no criminal behavior resulting from the chats that prompted the TelegramGate scandal. (Docket No. 154 at 20). Additionally, Plaintiffs claim the post was done "as a response to [P]laintiffs' Spoilation Letter" that had been sent to Mr. Fonseca "on that same day." (Docket Nos. 130 ¶ 267(b) and 154 at 20).

The Court concludes that Plaintiffs have not shown cause for Count Twenty to survive dismissal under Fed. R. Civ. P. 12(b)(6). While the X post coincides with the publication of the Board of the Independent Prosecutor's report, Plaintiffs do not allege facts to plausibly show that Mr. Fonseca knew the Board of the Independent Prosecutor's report had cleared Mr. Sánchez of criminal behavior in the TelegramGate scandal or that Mr. Fonseca made the X post in response to the report. (Docket Nos. 130 and 154 at 20). Although the Court notes Mr. Fonseca's decision to delete the post within minutes of publishing it and the temporal proximity of the post to Mr. Fonseca's receipt of Plaintiffs' Spoilation Letter that same day, Plaintiffs do not offer sufficient

facts in support of actual malice. *See* <u>Mile Marker, Inc.</u>, 811 So.2d at 845.

Drawing all reasonable allegations in Plaintiffs' favor and treating Plaintiffs' non-conclusory factual allegations as true, the Court does not find Plaintiffs have plausibly alleged Mr. Fonseca acted with actual malice when he called Mr. Sánchez "corrupt." *See* <u>id.</u>; <u>Nieto-Vicenty</u>, 984 F.Supp.2d at 20; (Docket No. 130 at ¶¶ 120-23). Claiming that Mr. Fonseca had "ill will" towards Mr. Sánchez when calling him "corrupt" does not "clearly" satisfy the actual malice standard, despite Plaintiffs' assertions to the contrary. *See* <u>Don King Prods.</u>, 40 So.3d at 45; (Docket No. 154 at 20). The Court concludes that Plaintiffs have failed to plead plausible entitlement for relief and therefore dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate. *See* <u>Ocasio-Hernandez</u>, 640 F.3d at 14.

**C. Defendants' Purported Waiver of New Arguments**

Plaintiffs contend that Defendants have waived their ability to argue that the aforementioned counts in the *SAC* lack sufficient facts to satisfy the malice element of defamation because Defendants did not previously raise the issue in their *Motion to Dismiss*. (Docket Nos. 133; 152 and 154 at 1-2). However, this argument fails because the Court, not Defendants, raised the issue of actual malice *sua sponte*. (Docket No. 151). As argued by Defendants, such waivers do not apply when a court exercises its

power to dismiss a claim on its own motion. *See*, *e.g.*, <u>Cardona Del Toro v. United States</u>, 1993 WL 7933, at *1 (1st Cir. 1993). Defendants are not precluded from arguing Plaintiffs have failed to allege actual malice for some of their claims in response to the Court's show cause order.

### D. Plaintiffs' Request to Amend the *SAC*

Fed. R. Civ. P. 15(a)(2) provides that leave to amend should be "freely give[n]" in circumstances in which "justice so requires." However, the rule "does not mean ... that a trial court must mindlessly grant every request for leave to amend." <u>Calderon-Serra v. Wilmington Trust Co.</u>, 715 F.3d 14, 19 (1st Cir. 2013) (citation omitted). A district court may deny leave to amend when the request is characterized by "undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part" or if the "proposed amendment 'would serve no useful purpose.'" <u>Id.</u> (citations omitted).

Here, Plaintiffs' request to amend the *SAC* is made with undue delay. In November 2022, Plaintiffs filed the *SAC* and Defendants subsequently filed their *Motion to Dismiss*. (Docket Nos. 130 and 133). In September 2023, the Court granted in part and denied in part the *Motion to Dismiss* and issued an accompanying show cause order, which Plaintiffs answered with their *Motion in Compliance* that same month. (Docket Nos. 150; 151 and 154). Over two years have passed since Plaintiffs filed the *SAC*, and over one year has

passed since the order to show cause, and still Plaintiffs have
not provided the factual allegations necessary for six of their
counts to survive the Court's show cause order. Further amendments
would be untimely and likely futile, particularly as the present
case has been pending since February 2021, when it was first filed
in Florida, giving Plaintiffs over three years to conduct the
necessary fact-finding to adequately plead actual malice. (Docket
No. 1); *see*, *e.g.*, Nikitine v. Wilmington Trust Co., 715 F.3d 388,
391 (1st Cir. 2013) (affirming denial of leave to amend after
nearly a year elapsed between the filing of plaintiff's complaint
and the request to amend and there was no good reason for the
delay); Calderón-Serra, 715 F.3d at 20 (same); Badillo-Santiago v.
Naviera-Merly, 378 F.3d 1, 7-8 (1st Cir. 2004) (affirming denial
of leave to amend after fourteen months elapsed from filing of the
complaint to plaintiff's request to amend). Furthermore, the Court
does not believe further amendments to the *SAC* would cure the
deficiencies in Counts Nine, Thirteen, Fourteen, Fifteen,
Eighteen, and Twenty. As a result, the Court denies Plaintiffs'
request to amend the *SAC*.

## V.  CONCLUSION

For the foregoing reasons, the Court **DISMISSES WITH PREJUDICE**
Counts Nine, Thirteen, Fourteen, Fifteen, Eighteen, and Twenty and
**DENIES** Plaintiffs' request to amend the *SAC*. Therefore, only the
following counts of the *SAC* remain pending before the Court: One,

Two, Three, Four, Five, Six, Seven, Eight, Twelve, Sixteen,

Seventeen, and Nineteen.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of November 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE