UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ELIAS SANCHEZ SIFONTE and　　　　　　　　　　Case No.: 22-cv-01444-RAM
VALERIE RODRIGUEZ ERAZO,

        Plaintiffs,

vs.

JOSUE FONSECA, *et al.,*

        Defendants.
_____/

### DEFENDANT ANTONIO MOJENA'S MOTION FOR SUMMARY JUDGMENT AS TO THE PUBLICATION ELEMENT OF DEFAMATION

**TO THE HONORABLE COURT:**

Come now defendant **ANTONIO G. MOJENA,** through the undersigned attorney and respectfully STATE, ALLEGE and REQUEST:

A threshold element of a defamation claim is publication—*i.e.*, that the defendant actively disseminated the allegedly defamatory statement. But in this case, defendant Antonio Mojena did not publish any of the allegedly defamatory statements set forth in the operative pleading. *See* (D.E. 130; the "Second Amended Complaint" or "SAC"). Because no genuine issue of material fact exists as to the threshold element of the tort, Mojena asks the Court to enter summary judgment in his favor.

### INTRODUCTION AND BACKGROUND

In July 2019, Puerto Rico experienced mass protests in response to "TelegramGate"—the leak of chat messages among then-Governor Ricardo Rossello and various government and non-government officials, including plaintiff Elias Sanchez ("Sanchez"), revealing highly concerning, vulgar, and possibly unethical actions of the administration and others. Numerous media outlets

1

reported on the leak and chain of events that ensued, including investigations into whether certain members of the group, including Sanchez, committed crimes or engaged in unethical activities.

On December 31, 2020, Plaintiffs initially filed this defamation suit in Florida state court against Fonseca and his media company, Jagual Media LLC, as well as defendants TM Television, Inc. (which is owned by Mojena) and several defendants associated with the Telemundo and NBCUniversal brands. *See* (D.E. 1). Plaintiffs' suit challenges a series of reports published between January 2019 and November 2020 concerning and related to TelegramGate—four of which were allegedly published by Mojena (the "Publications"; *see* D.E. 130, Counts I, II, VIII, XIX; 19–270).[1]

After the suit was removed to the U.S. District Court for the Southern District of Florida, certain defendants moved to dismiss the initial complaint; on November 1, 2021, the court granted Fonseca's and Jagual Media LLC's motion to dismiss in part, ordering Plaintiffs to address a number of pleading deficiencies, and denying the remaining motions as moot. (D.E. 67). After Plaintiffs filed an amended complaint on November 23, 2021 (D.E. 69), certain defendants moved to transfer or dismiss the case (D.E. 74)—a motion that was granted as to transfer on September 8, 2022—resulting in the transfer of the case to this Court. (D.E. 108–10).

As directed by this Court after a status conference, Plaintiffs filed the 20-count SAC on November 9, 2022. Various defendants then filed motions to dismiss, which caused the dismissal of all or parts of Counts I, III, IX, X, XI, XII, and XIX. *See* (D.E. 150). Following a *sua sponte* order of the Court and subsequent briefing on the matter of actual malice, *see* (D.E. 151–55), the Court further dismissed all or parts of Counts IX, XIII, XIV, XV, XVIII, and XX. (D.E. 156).

---

[1] Counts XIII and XVIII (improperly also labeled as Count XIII) also purported to state claims against Mojena, but this Court dismissed them. D.E. 156.

Thus, as it stands concerning Mojena, all or parts of Counts I–II, VIII, and XIX for defamation remain operative.[2]

As to Mojena, the SAC's factual allegations are meager. The SAC repeatedly lumps Mojena in with the other defendants to conclusorily allege that all defendants, including Mojena, "made, "acquiesce[d]," "approv[ed]," allow[ed,]" "afforded," "caused and published," "conveyed," "concocted," "play a key role [in]," "took advantage [of]," "broadcast," and "supported" the Publications. *See* (D.E. 130; 23, 25, 34, 38, 40, 52 64, 81, 95, 97, 111, 118, 123, 125.).

Beyond these conclusory averments, SAC's only factual allegations about Mojena's involvement in the Publications are that Mojena owns, and is president of, TM Television, *id.* 14; that he "conducts business with Telemundo PR, Telemundo Network and NBCUniversal," *id.* 15; and that he produced the Publications by allegedly overseeing and directing Fonseca. *Id.* 15, 20. This paucity of allegations is understandable given that Mojena had nothing to do with the Publications at issue in this case. *See* Statement of Facts in Support of Antonio Mojena's Motion for Summary Judgment ("SOF") 5,6,8.

The record shows that Mojena is, in fact, the owner and only shareholder of TM Television, which was the producer of the Publications, and that TM Television conducts business with Telemundo-branded entities. *Id.* 1,4,5. But beyond his mere status as the owner of TM Television, Mojena had nothing to do with any of the at-issue Publications. That is, Mojena himself played no role in the conception, pitching, researching, writing, editing, producing, overseeing, creating, approving, reviewing, filming, or distribution of any of the allegedly defamatory material. *Id.* 8

---

[2] The counts in the SAC are variously titled "defamation," "libel," and "slander." Under Florida law, libel (for written statements) and slander (for oral statements) constitute the two categories of defamation, and they receive identical treatment. *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006).

For this reason, as set forth more specifically below, Plaintiffs cannot present any genuine issue of material fact as to the defamation element of publication. Because Mojena didn't publish the allegedly defamatory statements—and because Plaintiffs can present no evidence to justify piercing TM Television's corporate veil, Mojena respectfully asks the Court to enter summary judgment in his favor.

## ARGUMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment" must show an "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And the party may discharge its duty by either producing its own evidence or pointing to an absence of evidence in support of the nonmoving party's case. *Id.* at 325, 331.

In the context of defamation claims, courts applying Florida law recognize that early disposition of defamation claims is particularly appropriate because "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016). *See also Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing the court's "prominent function" in defamation cases to "either dismiss[] the complaint for failure to state a cause of action or [] grant[] a directed verdict at the proof stage"); *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978) (noting that pretrial disposition, where possible, is especially important in defamation cases because of the "chilling effect" such cases have on the exercise of First Amendment rights); *Flynn v. Wilson*, No. 2D2024-0278, 2024 WL 5063563, at *3 (Fla. 2d DCA Dec. 11, 2024) (explaining that "the First Amendment requires that [a

4

defamation] claim be considered against the background of a profound national commitment to the freedom of speech and especially of political speech, which is essential to the security of the Republic") (citation and quotation marks omitted). In other words, "because of the importance of free speech, summary judgment is the 'rule,' and not the exception, in defamation cases." *Larreal v. Telemundo of Florida, LLC*, 489 F. Supp. 3d 1309, 1318 (S.D. Fla. 2020) (citation omitted).

In this case, Plaintiffs can present no issue of material fact as to their defamation claims. To state a valid defamation claim, Plaintiffs must plead and prove: (a) an unprivileged publication to a third party of (b) a false and defamatory statement of and concerning another, as well as (c) fault on the part of the publisher, and (d) damages. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)).

Plaintiffs can present no issue of material fact as to the first element, publication, for two primary reasons. First, Plaintiffs cannot demonstrate that *Mojena, himself* published any Publication—as opposed to his company, TM Television. Second, because Mojena did not publish any of the allegedly defamatory content, the only way Plaintiffs could assert a claim against him is by piercing TM Television's corporate veil. But Plaintiffs do not plead facts—and therefore cannot present facts at the Rule 56 stage—that would justify piercing the corporate veils. Summary judgment is therefore appropriate.

### I.     Mojena Did Not Publish Any Publication In This Case.

The element of publication—that "the defendant published a false statement" about the plaintiff—is essential to a defamation claim under Florida law. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120 (S.D. Fla. 2021) (citation omitted); *see also Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214 (Fla. 2010) ("Under Florida law, the tort of libel is not completed until the statements are published"). Indeed, "because the publication of a statement is a necessary

5

element in a defamation action, *only one who publishes*" the allegedly defamatory material "can be subject to this form of tort liability." *Zimmerman v. Buttigieg*, No. 8:20-cv-1077, 2021 WL 694797, at *8 (M.D. Fla. Feb. 23, 2021) (emphasis added); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (dismissing a defamation claim that did not allege facts demonstrating the element of publication as to particular defendants).

In this case, the bulk of the allegations regarding the element of publication are conclusory statements: as noted above, the SAC repeatedly alleges, without elaboration, that Mojena "published" the Publications, or some synonymous variant. *See* (D.E. 130; 23, 25, 34, 38, 40, 52 64, 81, 95, 97, 111, 118, 123, 125.). But such bald allegations of publication constitute a naked, formulaic, and impermissible recitation of the elements that cannot withstand even Rule 12 scrutiny. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Klayman v. Judicial Watch, Inc.*, 13-20610-CIV, 2013 WL 4780139, at *7 n.2 (S.D. Fla. Sept. 5, 2013) (noting that a complaint failed to state a defamation claim as to the publication element because allegations that defendants "direct[ed]" or exercised "authority" over a related defendant were conclusory). And, more saliently at the current procedural posture, such naked allegations cannot create a genuine fact issue that Mojena did in fact publish the at-issue material. *See Costoso v. United States*, 884 F. Supp. 52, 57 (D.P.R. 1995) ("naked assertions . . . [cannot] substantiate the existence of a genuine issue of material fact").

The FAC's main *factual* allegations regarding publication—specifically the allegations that Mojena owns TM Television and conducts business with Telemundo-branded entities—fare no better than Plaintiffs' conclusory allegation. *See* D.E. 130; 14–15, 20. This pair of allegations is in fact true, *see* SOF 4, 5 but they do not create any issue of fact regarding the element of publication. Corporate ownership, much less mere business relationship, cannot satisfy the

6

publication element of defamation because liability for publication cannot attach to a defendant merely because he owns the entity that actually published the material. The case law is unambiguous that (absent corporate veil-piercing—which is addressed below) mere ownership of a separate corporate entity cannot satisfy the publication element. *See, e.g., Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173, at *8 (M.D. Fla. Apr. 3, 2015), *aff'd,* 650 F. App'x 744 (11th Cir. 2016) (finding that a parent company was not liable because the complaint's allegation that the parent company "wholly owned" the publishing defendant was insufficient to allege the defamation element of publication).

Plaintiff's final factual allegation about Mojena—that he supposedly supervised and directed Fonseca, *see* DIN 130; 15—is also unavailing. As an initial matter, it's simply not true, as the record shows that Mojena did not oversee or direct any of the at-issue Publications, and that he played no role in the conception, pitching, researching, writing, editing, producing, overseeing, creating, approving, reviewing, filming, or distribution of any of them. SOF 7. In short, Mojena had nothing to the with the allegedly defamatory material.

Yet even if Mojena did in fact supervise or direct Mojena, supervision of the actual publisher does not impute publication liability from the publisher to the supervisor. *See, e.g., Klayman*, 2013 WL 4780139, at *7 n.2 (finding that a complaint failed to state a claim against the president, chief operating officer, and members of an organization's board of directors who allegedly "direct[ed]" and exercised "authority" over the defendant who actually published the material); *Corsi*, 519 F. Supp. 3d, at 1120–21 (dismissing defamation claims for failure to plausibly plead the publication element and specifically rejecting the plaintiff's argument that the publication element could attach to a defendant who allegedly "directed" another party to publish the at-issue material); *Klayman*, 2015 WL 1546173, at *8 (finding that a parent company was not

liable because the complaint's allegations that the two publishing defendants worked "under the direction of [the parent company], to promote [its] agenda" were insufficient to allege the defamation element of publication as to the supervising company); *Figueroa v. Rivera*, Case Nos. KLCE202400156, KLCE202400175, at *8–*11, *40–*41 (PR Ct. App. Panel XI, Aug. 8, 2024) (finding that the producer of a radio show was not liable for defamation despite his supervision over the allegedly defamatory material).

In sum, because Plaintiffs cannot produce any facts demonstrating that Mojena published the allegedly defamatory material, no issue of fact exists as to the element of publication, and summary judgment in favor of Mojena is warranted.

## II. Mojena Cannot Be Liable For The Acts Of Tm Television.

Mojena is not responsible for TM Television's production of the allegedly defamatory Publications because, under Florida law, every corporation, LLC, and natural person is a "separate and distinct legal entit[y]." *Turner v. Homestead Police Dep't*, 828 Fed. *App'x* 541, 544 (11th Cir. 2020). And Florida law is clear that every corporation has an independent separate existence from its corporate officers and directors. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *In re Miner*, 185 B.R. 362, 366 (N.D. Fla. 1995); *111 Properties, Inc. v. Lassiter*, 605 So. 2d 123, 126 (Fla. 4th DCA 1992). Officers of a corporation "are not liable for corporate acts simply by reason of the officer's relation to the corporation." Therefore, a plaintiff must pierce the corporate veil to hold the president or other officer individually liable for the torts of his corporation. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984) (explaining that black-letter corporate law recognizes the importance and legitimacy of the corporate form and will disregard it "only to prevent some injustice.").

Courts applying Florida law will not pierce the corporate veil unless an "extreme abuse of the corporate form" has occurred. *Government of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1362

8

(S.D. Fla. 2002). Thus, plaintiffs seeking to pierce the corporate veil bear a "heavy burden." *Resolution Trust Corp. v. Latham & Watkins*, 909 F. Supp. 923, 930 (S.D.N.Y. 1995) (applying Florida law); *see also Erben v. Raymond James Euro. Hold., Inc.*, No. 8:11-cv-933, 2012 WL 12874586, at *3 (M.D. Fla. Apr. 10, 2012); *Roberts' Fish Farm v. Spencer*, 153 So. 2d 718, 721 (Fla. 1963)

This burden requires the plaintiff to establish that: (1) the corporation is the alter ego of the officer, *and* (2) the corporation engaged in improper conduct through its organization or use of the entity which caused the plaintiff's injuries. *Johnson Enters. of Jacksonville v. FPL Grp.*, 162 F.3d 1290, 1320 (11th Cir. 1998); *North Am. Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F. Supp. 2d 1299, 1306 (M.D. Fla. 2009); *Dania Jai-Alai, Inc. v. Sykes*, 450 So. 2d 1114, 1120–21 (Fla. 1984). Without pleading and proving such facts, a plaintiff "cannot be heard to question the corporate existence but must confine [their] efforts to the remedies provided by law for satisfying [their] judgment from the assets of the corporation." *Dania Jai-Alai Palace*, 450 So. 2d at 1119-20 (citations and italics omitted).

Because TM Television—not Mojena—is the producer of some of the at-issue Publications, Mojena can be liable for TM Television's corporate acts only if Plaintiffs can point to record facts sufficient to demonstrate that this Court should pierce the corporate veil. They cannot.

### A.   *TM Television is not an alter ego of Mojena.*

To establish that TM Television is an alter ego of Mojena, Plaintiffs must provide facts sufficient to show that TM Television manifests no separate corporate interest of its own and functions solely to achieve the purposes of Mojena. *See BEO Mgmt. Corp. v. Horta*, No. 3D19-1989, 2020 WL 6751313, at *2–*3 (Fla. 3d DCA Nov. 18, 2020). That is, Plaintiffs must show

9

that Mojena dominated and controlled TM Television "to such an extent that [TM Television's] independent existence was non-existent." *Id.*

Plaintiffs did not allege—and therefore cannot now show—any facts to demonstrate that TM Television is Mojena's alter ego. Though Mojena is the president and sole owner of the corporation, that alone, is insufficient to demonstrate the lack of TM's Televisions independent existence. *See Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *9 (M.D. Fla. 2015) (explaining that facts sufficient to establish "veil-piercing claim or theory of liability must be presented in the plaintiff's pleading" and cannot be raised in later filings) (citations omitted).

### B. *Mojena has not engaged in any improper conduct through TM Television.*

Even if TM Television were merely an alter ego of Mojena, the corporate veil cannot be pierced so long as TM Television's separate identity was lawfully maintained. *See Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000). That is, unless Plaintiffs can show that Mojena directly engaged in improper conduct through TM Television, the corporate veil cannot be pierced. *Id.* Improper conduct occurs when an officer organizes or operates the entity for a fraudulent purpose. *Roundtree*, 2018 WL 4215949, at *2. In other words, the entity must have been created as a "mere device or sham to accomplish some ulterior purpose or [] the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Johnson Enters. of Jacksonville*, 162 F.3d at 1320 (citation and ellipses omitted).

Plaintiffs have not alleged—and therefore cannot prove—that Mojena organized TM Television to engage in fraudulent activities or used it for such purposes. Because Plaintiffs cannot present sufficient facts to justify the piercing of TM Television's corporate veil, the corporate form

remains intact, and Mojena cannot face individual liability for the alleged acts of his company. Summary judgment for Mojena is therefore proper.

## CONCLUSION

Mojena had nothing to do with the allegedly defamatory Publications. And because his status as owner and president of TM Television cannot impute liability upon him—and because Plaintiffs can point to no facts sufficient to justify piercing the corporate veil—Mojena asks the Court to enter summary judgment in his favor.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this October 8, 2025.

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all parties in the case.

**s/ROBERTO SUEIRO DEL VALLE**
USDC No 207801
Tulipán 170, Urb. San Francisco
San Juan, PR 00927-6221
Tel.: 787-753-4712
E-MAIL    sueirolaw@me.com
          rsdv@me.com