**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ELIAS SÁNCHEZ-SIFONTE et al.,

        **Plaintiffs,**

            v.

JOSUE FONSECA, et al.

        **Defendants.**

**CIVIL NO. 22-1444 (RAM)**

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

The time for forbearance is finished. Pending before the Court once more are multiple complaints concerning Plaintiff Elías Sánchez-Sifonte ("Sánchez") and his wife Valerie Rodríguez-Erazo ("Rodríguez") (collectively, "Plaintiffs")'s failure to comply with Court-mandated discovery obligations.

While all involved in this case are accustomed to Plaintiffs' discovery noncompliance, the latest filings add a novel three-way blame game among: (a) Plaintiffs and their newly appearing counsel, (b) Plaintiffs' pro hac vice counsel Luis Frank Navarro and Lorenzo Palomares Starbuck, and (c) Plaintiffs' local counsel Raymond Sanchez-Maceira. Plaintiffs and their new counsel conveniently and implausibly attribute their latest extension request to "a rushed and disorganized discovery process, the full extent and seriousness of which were not previously brought to Plaintiffs'

attention," seeming to place the blame on the shoulders of all their previous lawyers. (Docket No. 294 at 1). Local counsel attributes the problem to pro hac vice counsel's repeated disobedience of court orders "notwithstanding [his] objections." (Docket Nos. 271, 275). Pro hac vice counsel, in turn, change their tune and attribute the failures to Plaintiffs themselves. (Docket No. 297).

Whatever the internal allocation of blame, the result is the same. It now seems that Plaintiffs' noncompliance over the past year has been willful and that Plaintiffs have made materially inconsistent representations to this Court. Therefore, this case is **DISMISSED WITH PREJUDICE** in its entirety.

## I.    DISCUSSION

### A. Plaintiffs' latest failure to comply with a court order

In the First Circuit, "disregard of court orders qualifies as extreme behavior[.]" Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 43-44 (1st Cir. 2007); *see also* Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir. 2005) (internal citations omitted) ("[i]t is settled law that a party flouts a court order at his peril").

Plaintiffs' latest transgression emerges as follows. Defendants Telemundo of Puerto Rico, LLC ("TPR"), Telemundo Network Group, LLC ("TNG"), and NBC Universal Media, LLC ("NBC") allege that Plaintiffs have failed to heed the Court's adoption of

Magistrate Judge Héctor L. Ramos-Vega's March 6, 2026 *Report and Recommendation* ("R & R"). (Docket Nos. 191, 254, 259, 267, 282). Although the R & R granted an earlier *Motion to Compel*, these defendants assert that Plaintiffs still have not furnished the ordered supplemental interrogatory responses or produced the identified documents. (Docket Nos. 267, 282). Nearly two months have now passed. **Plaintiffs' *Opposition* does not meaningfully engage with the assertion that they have produced nothing in response to the Court's adoption of Magistrate Judge Ramos-Vega's March 6, 2026 R & R; the *Opposition* instead focuses on an ancillary issue.** (Docket No. 269). Nor have Plaintiffs put on the record any evidence of their compliance since their *Opposition*.

Thus, even before the latest round of filings for permission to withdraw or for further extensions, the Court had before it allegations that Plaintiffs had ignored an explicit court order for two months.

The Court notes that as it prepared to release this Opinion and Order, Defendants TM Television, Inc. ("TMTV") and Antonio Mojena ("Mojena") filed a separate *Motion to Dismiss* asserting that Plaintiffs had not fully complied with a court order requiring them to serve complete interrogatory responses by May 13, 2026. (Docket No. 301). Although the *Motion to Dismiss* outlines additional concerns similar to the ones at issue here and further bolsters the evidence of discovery noncompliance, the Court deems

that Plaintiffs' prior track record warrants dismissal on its own.
Therefore, the Court does not reach the arguments in the latest
*Motion to Dismiss* at Docket No. 301, which is **DENIED AS MOOT**.

### B. The three-way blame game

The latest round of filings from Plaintiffs and their various
counsel make the justifications for noncompliance less persuasive,
not more.

First, on May 13, 2026, the deadline for Plaintiffs to serve
complete interrogatory responses pursuant to a different court
order, new counsel for Plaintiffs sought another week to furnish
the interrogatory responses Plaintiffs should have provided months
ago. (Docket No. 294). New counsel told the Court that he has been
retained and was seeking yet another extension "[d]ue to
significant procedural and discovery-related issues arising from
a rushed and disorganized discovery process, the full extent and
seriousness of which were not previously brought to Plaintiffs'
attention." Id. at 1. Thus, Plaintiffs seem to be blaming all their
previous lawyers for the history of noncompliance in this case.
Given the repeated and unambiguous court orders about Plaintiffs'
pattern of discovery noncompliance, however, the assertion that
Plaintiffs were not aware of it is nothing short of astounding.
*See, e.g.,* (Docket Nos. 251, 260, 279, 280, 283) (a small sample
of the Court's condemnation of Plaintiffs' "dilly dallying").

Second, local counsel's *Motion to Withdraw* instead pins the blame on pro hac vice counsel. Therein, local counsel acknowledges "multiple violations to the court discovery orders and sufficient defendants request for sanctions" and argues that his continued involvement in the case would violate his "obligations under the Puerto Rico Rules of Professional Conduct." (Docket No. 271 at 2). In his *Response* to certain defendants' *Opposition* to the *Motion to Withdraw*, local counsel states that pro hac vice counsel's "continued non-compliance with those orders" came notwithstanding his objections. (Docket No. 275 at 3). In his *Separate Response of Sponsoring Counsel to Order to Show Cause*, local counsel similarly describes the "substantive internal discovery choices" as having been made by pro hac vice counsel. (Docket No. 300 at 2). These averments indicate that pro hac vice attorneys knew of Court-mandated deadlines and decided to disobey them, while stating to the court in motions that the delays were caused by factors such as medical operations and busy trial schedules. *See, e.g.*, (Docket Nos. 262, 263).

Third, pro hac vice counsel's filings point in yet another direction. After previously suggesting that the delays in compliance were inadvertent or the result of temporary extenuating circumstances, they now assert that their clients Sánchez and Rodríguez "are themselves licensed attorneys and members of the bar. As such, they possess a level of sophistication and

professional knowledge regarding discovery obligations, court deadlines, and the consequences of noncompliance[.]" (Docket No. 297 at 3). They further declare that "an attorney's ability to respond to and comply with discovery obligations is inherently and directly dependent upon the cooperation of the client...Where a client fails to timely provide documents, information, or sworn responses necessary to answer interrogatories, or otherwise fails to engage meaningfully with counsel's requests for the same, the resulting delays" cannot be blamed on the attorneys. Id. Pro hac vice counsel also aver that they have completed much uncompensated work on this case despite the "financial realities of an under-funded client." Id. at 4. Thus, the very lawyers that have done the bulk of the work for Plaintiffs now suggest that the delays stemmed from their clients' lack of cooperation and funds, not from medical circumstances, benign confusion, or busy attorney schedules.

These averments stand in stark contrast to what Plaintiffs have formerly told this Court. On one occasion, the Court was informed that compliance delays were because of an attorney's busy trial schedule and because Sánchez had "experienced a serious fall that required a complex surgical procedure on his left ankle." (Docket No. 262). On another occasion, Plaintiffs explicitly stated that "[t]he delay in formal service was not the result of willful noncompliance, but rather arose from excusable

circumstances. During the relevant period, undersigned counsel was actively engaged in back to back jury trials, and Plaintiff Sánchez underwent a traumatic surgical procedure and recovery." (Docket No. 263). The attorneys' recent filings belie any benign explanation. Either Plaintiffs or their counsel, or both, dragged their feet, repeatedly breached their discovery obligations, and disregarded court orders. Moreover, it is of import here that the First Circuit "has consistently turned a deaf ear to the plea that the sins of the attorney should not be visited upon the client." Malloy v. WM Specialty Mortg. LLC, 512 F.3d 23, 27 (1st Cir. 2008) (internal quotations omitted).

### C. Dismissal is proper

Any of the above conclusions support dismissal. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) provides that if a party "fails to obey an order to provide or permit discovery...the court where the action is pending may issue further just orders[.]" Fed. R. Civ. P. 37(b)(2)(A)(v) provides that "dismissing the action or proceeding in whole or in part" can be an appropriate sanction for not obeying a discovery order. The appropriateness of this sanction, or any other, "depends on the circumstances of the case." Malot, 478 F.3d at 43-44. District courts must consider the following "non-exclusive list of substantive factors" when evaluating whether to impose sanctions: "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the

deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Id. (quoting Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006)). "Using dismissal as a sanction in such a case recognizes the court's strong interest in maintaining discipline and husbanding scarce judicial resources; after all, such a sanction not only serves to punish the noncompliant litigant but also acts as a deterrent to those who might be tempted to emulate a bad example." Torres-Vargas, 431 F.3d at 393. In the First Circuit, "although notice is not required before imposing dismissal as a sanction, counsel's disregard of a prior warning from the court exacerbates the offense, and the lack of warning sometimes mitigates it." Vallejo v. Santini-Padilla, 607 F.3d 1, 9 (1st Cir. 2010) (citation modified).

Three instructive teachings from the case law can be applied to the case at bar: (a) exhaustion of lesser sanctions; (b) provision of notice to Plaintiffs that further noncompliance risked the dismissal of the entire case; and (c) the repetition of Plaintiffs' violations.

As for lesser sanctions, they have been tried and found wanting. The Court has exhausted them by dismissing Plaintiffs' consequential damages claims, repeatedly awarding defendants reasonable expenses - including attorneys' fees - in connection with multiple discovery disputes resolved against Plaintiffs, and

even imposing expert preclusion by barring Plaintiffs from offering expert testimony or reports from their untimely and improperly disclosed experts. *See, e.g.*, (Docket Nos. 251, 260, 279, 280, 283, 289).

Notice of the risk Plaintiffs were running has also amply been provided. On March 3, 2026, the Court warned that "[t]here has been enough dilly dallying" and that failure to serve the signed tax return request forms would "result in dismissal of the claims for economic damages." (Docket No. 251). On May 1, 2026, that dismissal was effectuated because Plaintiffs did not comply with the Court's instructions. (Docket No. 279). On the same day, the Court ordered Plaintiffs to pay attorneys' fees "considering Plaintiffs' pattern of noncompliance and failure to heed explicit Court-imposed deadlines." (Docket No. 280). On May 6, 2026, the Court warned Plaintiffs that their conduct placed them "perilously close to the ultimate sanction." (Docket No. 283 at 8).

The "repetition of violations" is one of the factors district courts consider in ascertaining the appropriate sanction order. Malot, 478 F.3d at 44. Here, the repetition factor weighs strongly in favor of dismissal. Plaintiffs' noncompliance has recurred across numerous discovery disputes and has involved ignoring several explicit orders. Some of them are as follows: the tax forms dispute that resulted in the dismissal of economic damages claims, (Docket Nos. 251, 260, 279); the discovery noncompliance

Civil No. 22-1444 (RAM)                                           10

identified in the R & R and the Court's adoption of it, (Docket Nos. 254, 259); the present motions alleging continued noncompliance vis-à-vis the R & R and Plaintiffs' inability to demonstrate obedience of the court orders currently at issue, (Docket Nos. 267, 269, 282); the interrogatories dispute for which certain defendants continue to claim lack of compliance, (Docket Nos. 283, 301); and the failure to timely disclose experts that led to preclusion. (Docket No. 289).

Accordingly, the Court is done with Plaintiffs' excuses. The record reflects repeated discovery noncompliance over the past year, disregard of court orders and deadlines, inadequate, contradictory, and shifting explanations for noncompliance, prejudice to defendants, the wasting of scarce judicial resources, and the failure of lesser sanctions. Given the ongoing blame game between Plaintiffs Sánchez and Rodríguez and three sets of their lawyers, the Court finds that lesser sanctions would not adequately address the misconduct in this case. Nor is it possible to now restore the orderly progress of litigation.

Hence, this case is **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) and the Court's inherent authority to manage its docket.

Civil No. 22-1444 (RAM)                                                 11

### D. Defendants are awarded reasonable expenses under Fed. R. Civ. P. 37(a)(5)(A)

Monetary sanctions are warranted in the case at bar. Generally, courts must impose attorneys' fees and expenses when compelling discovery, unless the party resisting discovery was substantially justified in doing so. Fed. R. Civ. P. 37(a)(5)(A). Resistance to discovery is "substantially justified" if there is a "genuine dispute" or if "reasonable people could differ as to the appropriateness of the contested action." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal citations and quotations omitted).

Here, TPR, TNG, and NBC request "that Plaintiffs be ordered to pay the fees that Defendants incurred in connection with requesting these documents and information from Plaintiffs and filing [the *Motion Requesting Order* at Docket No. 267]." (Docket No. 267 at 3). Similarly, having been forced to draft a reply in support of that *Motion Requesting Order*, TPR, TNG, and NBC ask that they be awarded "their reasonable attorneys' fees and costs incurred in bringing the Motion and the related filings." (Docket No. 282 at 10).

The Court finds that, considering Plaintiffs' pattern of noncompliance and failure to heed explicit Court-imposed deadlines, Plaintiffs have not demonstrated that their actions were "substantially justified." As discussed above, there are now

Civil No. 22-1444 (RAM)                                                    12

three sets of filings on the record from Plaintiffs, their pro hac vice counsel, and their local counsel alternatively blaming each other for the many delays in this case. Taken cumulatively and without crediting any one account, the Court concludes that the noncompliance was intentional.

Hence, pursuant to Fed. R. Civ. P. 37(a)(5)(A), the Court awards TPR, TNG, and NBC reasonable expenses.

## II.  CONCLUSION

For the foregoing reasons, the entirety of this case is **DISMISSED WITH PREJUDICE.** The *Motion Requesting Order* at Docket No. 267 is **GRANTED** to the extent it seeks dismissal and Fed. R. Civ. P. 37(a)(5)(A) sanctions. The motions to withdraw at Docket Nos. 271, 291, and 292 are **DENIED AS MOOT.** The *Motion to Dismiss* at Docket No. 301 is similarly **DENIED AS MOOT.**

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), the Court awards TPR, TNG, and NBC reasonable expenses incurred in the dispute at Docket No. 267 and 282. TPR, TNG, and NBC shall file a bill containing their reasonable fees and costs by **June 1, 2026.** The filing shall not exceed 5 pages.

Judgment of dismissal with prejudice shall be entered accordingly.

Civil No. 22-1444 (RAM)                                                    13

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of May 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE